1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAWRENCE M. HADLEY - State Bar No. 157,728
lhadley@glaserweil.com
STEPHEN E. UNDERWOOD - State Bar No. 320,303
sunderwood@glaserweil.com
GLASER WEIL FINK HOWARD
   AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:  (310) 556-2920

Attorneys for Plaintiff
Core Optical Technologies, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| CORE OPTICAL TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>COMCAST CORPORATION, a Pennsylvania corporation, CENTURYLINK, INC., a Louisiana corporation, GOOGLE, LLC, a Delaware limited liability company, ZAYO GROUP, LLC, a Delaware limited liability company, APPLE, INC., a California corporation, COX COMMUNICATIONS, INC, a Delaware corporation,  ALCATEL SUBMARINE NETWORKS SAS, a French *société par actions simplifiée*, and DOES 1-10,<br><br>Defendants. | CASE NO:<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Glaser Weil

1950634

Plaintiff Core Optical Technologies, LLC ("Plaintiff" or "Core"), by and through its undersigned counsel, hereby files this Complaint against Defendants Comcast Corporation ("Comcast"), CenturyLink, Inc. ("CenturyLink"), Google, LLC ("Google"), Zayo Group, LLC ("Zayo"), Apple, Inc. ("Apple"), Cox Communications, Inc. ("Cox"), Alcatel Submarine Networks SAS ("ASN"), and DOES 1-10 (collectively, "Defendants"). For its complaint, Core alleges as follows:

## THE PARTIES

1.      Core is a limited liability company organized and existing under the laws of the state of California. Core has a principal place of business at 18792 Via Palatino, Irvine, California 92603.

2.      Defendant Comcast is a corporation organized and existing under the laws of the state of Pennsylvania, with a principal place of business at 1701 JFK Boulevard, Philadelphia, PA 19103.

3.      Defendant CenturyLink (d/b/a "Lumen Technologies") is a corporation organized and existing under the laws of the state of Louisiana, with a principal place of business at 100 CenturyLink Drive, Monroe, LA 71203.

4.      Defendant Google is a limited liability company organized and existing under the laws of the state of Delaware, with a principal place of business at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

5.      Defendant Zayo is a limited liability company organized and existing under the laws of the state of Delaware, with a principal place of business at 1821 30th Street, Unit A, Boulder, CO 80301.

6.      Defendant Cox is a corporation organized and existing under the laws of the state of Delaware, with a principal place of business at 6205-B Peachtree Dunwoody Road NE, Atlanta, GA 30328.

7.      ASN is a *société par actions simplifiée* existing under the laws of France, with a principal place of business at 7 Route de Villejust, 91620 Nozay, France.

1950634

8.      Defendants DOES 1-10 are corporate affiliates of Comcast, CenturyLink, Google, Zayo, Cox and/or ASN, who participated in the infringing acts complained of herein. The identities of DOES 1-10 are currently unknown, because publicly-available information does not permit the identification of each affiliate who participated in the infringing acts. Core expects the identities of DOES to be revealed in discovery. Core reserves the right to amend this Complaint to name each DOE once their identities have been revealed.

## JURISDICTION

9.      This is an action for infringement of method claims, and *only* method claims, of U.S. Patent No. 6,782,211, entitled "Cross Polarization Interface [sic] Canceler," which was duly issued by the United States Patent and Trademark Office on August 24, 2004 ("the '211 patent"). The asserted claims in this case are *only* method claims 30, 32, 33, 35 and 37 of the '211 patent ("the Asserted Claims"). A copy of the '211 patent is attached as Exhibit 1 to this Complaint.

10.     This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338(a), because the claims arise under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*.

11.     This Court has personal jurisdiction over each Defendant, because:

### Comcast

12.     This Court has general personal jurisdiction over Comcast because Comcast conducts systematic and regular business within the state of California. Comcast employs over 5,000 people in California, and provides telecommunication services to millions of customers within California. *See* https://california.comcast.com/about/#:~:text=Comcast%20is%20deeply%20committed%20to,smart%20home%E2%80%9D%20and%20phone%20service ("Comcast is deeply committed to California, where our nearly 5,000 employees serve more than 3 million customers throughout the state.") Comcast also maintains at least a dozen regular places of business within the state of California, including, on information and

belief, corporate offices, service centers, and retail outlets. This systematic and regular business subjects Comcast to general personal jurisdiction in California.

13.     This Court also has specific personal jurisdiction over Comcast because, on information and belief, Comcast has directly infringed the Asserted Claims by using the Accused Instrumentalities (as defined below) within California, and within this judicial district. On information and belief, Comcast has used the Accused Instrumentalities to provide fiberoptic telecommunication services to individuals and businesses within California, and within this judicial district. For the reasons set forth below, such use constitutes infringement of the Asserted Claims. Thus, Comcast is subject to specific personal jurisdiction in this district, because it has committed acts of infringement in California, and Core's claims arise out of such infringement.

<u>CenturyLink</u>

14.     This Court has general personal jurisdiction over CenturyLink because CenturyLink conducts regular and systematic business within the state of California. On information and belief, CenturyLink owns and operates multiple commercial data centers within California, including in Burbank, Irvine, Log Angeles, Sacramento, San Diego, San Francisco, Santa Clara, and Sunnyvale, CA. CenturyLink also maintains regular and established places of business at, at least, the following locations within California: (i) 14452 Franklin Ave, Tustin, CA 92780; (ii) 7 Mason, Irvine, CA 92618; (iii) 1550 Marlborough Ave #100, Riverside, CA 92507; (iv) 2461 W La Palma Ave, Anaheim, CA 92801; (v) 818 7th St #510, Los Angeles, CA 90017; (vi) 7576 N Del Mar Ave, Fresno, CA 93711; (vii) 305 W Napa Ave, Fresno, CA 93706; (viii) 1340 Treat Blvd #100, Walnut Creek, CA 94597; (ix) 1 California St #250, San Francisco, CA 94111; (x) 23965 Connecticut St, Hayward, CA 94545; and (xi) 2953 Bunker Hill Ln #202, Santa Clara, CA 95054. CenturyLink's regular and systematic business in California, including its operation of the foregoing places of business and data centers, subjects it to general personal jurisdiction here.

15.     This Court also has specific personal jurisdiction over CenturyLink

because, on information and belief, CenturyLink has directly infringed the Asserted Claims by using the Accused Instrumentalities (as defined below) within California, and within this judicial district. On information and belief, CenturyLink has used the Accused Instrumentalities to provide fiberoptic telecommunication services to individuals and businesses within California, and within this judicial district, including at the facilities listed above. For the reasons set forth below, such use constitutes direct infringement of the Asserted Claims. Thus, CenturyLink is subject to specific personal jurisdiction in this district, because it has committed acts of infringement in California, and because Core's claims arise out of such infringement.

Google

16. This Court has general personal jurisdiction over Google because: (i) Google is incorporated in the state of California; and (ii) Google has its principal place of business in California, at 1600 Amphitheatre Parkway, Mountain View, CA.

17. This Court also has specific personal jurisdiction over Google because, on information and belief, Google has directly infringed the Asserted Claims by using the Accused Instrumentalities (as defined below) within California, including within this judicial district. On information and belief, Google has used the Accused Instrumentalities to provide data and services to individuals and businesses within California, and within this judicial district. For the reasons set forth below, such use directly infringes the Asserted Claims. Thus, Google is subject to specific personal jurisdiction in this district, because it has committed acts of infringement in California, and because Core's claims arise out of such infringement.

Zayo

18. This Court has general personal jurisdiction over Zayo because Zayo conducts regular and systematic business within California. Zayo maintains regular and established places of business at, at least, the following locations within California: (i) 9606 Aero Dr #1900, San Diego, CA 92123; (ii) 12270 World Trade Dr #100, San Diego, CA 92128; (iii) 17400 Von Karman Ave, Irvine, CA 92614; (iv)

Glaser Weil

1950634

707 Wilshire Blvd # 4850, Los Angeles, CA 90017; (v) 5101 Lafayette St, Santa Clara, CA 95054; and (vi) 501 2nd St #400, San Francisco, CA 94107. Zayo's regular and systematic business in California, including its operation of the foregoing regular and established places of business, subjects it to general personal jurisdiction here.

19.    This Court also has specific personal jurisdiction over Zayo because, on information and belief, Zayo has directly infringed the Asserted Claims by using the Accused Instrumentalities (as defined below) within California, including within this judicial district. On information and belief, Zayo has used the Accused Instrumentalities to provide telecommunication and data services to individuals and businesses within California, and within this judicial district, including at the facilities identified above. For the reasons set forth below, such use constitutes direct infringement of the Asserted Claims. Thus, Zayo is subject to specific personal jurisdiction in this district, because it has committed acts of infringement within California, and because Core's claims arise out of such infringement.

Cox

20.    This Court has general personal jurisdiction over Cox because Cox conducts systematic and regular business within the state of California. On information and belief, Cox provides telecommunication services to millions of customers within California. Cox also maintains at least a dozen regular and established places of business within the state of California, including, on information and belief, corporate offices, service centers, and retail outlets. This systematic and regular business subjects Cox to general personal jurisdiction in California.

21.    This Court also has specific personal jurisdiction over Cox because, on information and belief, Cox has directly infringed the Asserted Claims by using the Accused Instrumentalities (as defined below) within California, including within this judicial district. On information and belief, Cox has used the Accused Instrumentalities to provide telecommunication and data services to individuals and businesses within California, and within this judicial district. For the reasons set forth

1950634

below, such use constitutes infringement of the Asserted Claims. Thus, Cox is subject to specific personal jurisdiction in this district, because it has committed acts of infringement in California, and because Core's claims arise out of such infringement.

ASN

22.     This Court has specific personal jurisdiction over ASN because, on information and belief, ASN has made Accused Instrumentalities within California, has sold or offered for sale Accused Instrumentalities to customers within California, has imported Accused Instrumentalities into California, has used Accused Instrumentalities within California, and/or has induced or contributed to customers' use of Accused Instrumentalities within California. As shown below, ordinary use of the Accused Instrumentalities constitutes direct infringement of the Asserted Claims. Thus, by making, selling, offering for sale, using, inducing, or contributing to use of the Accused Instrumentalities within California, ASN has directly or indirectly infringed the Asserted Claims within California. Core's claims against ASN arise out of such direct and indirect infringement of the Asserted Claims. Accordingly, this Court has specific personal jurisdiction over ASN, because ASN specifically directed acts towards California, and because Core's claims arise out of such acts.

23.     Public evidence demonstrates that ASN has committed acts of direct or indirect infringement within California. For instance, according to a September 16, 2019 article in the trade publication "Capacity," ASN recently "announced the construction of the $350 million Southern Cross NEXT cable." Ex. 2 (Capacity article, available at https://www.capacitymedia.com/articles/3824231/asn-begins-construction-of-350m-southern-cross-next-cable) at 1. Southern Cross NEXT is (or will be) a 13,700 km subsea fiberoptic cable which connects the United states with Australia, New Zealand, and several surrounding islands. *Id.* The U.S. terminus of the Southern Cross NEXT cable is (or will be) ***Los Angeles***. *Id.* On information and belief, the Los Angeles-based U.S. terminus of the Southern Cross cable uses (or will use) 1620 SOFTNODE units to perform dual-polarization optical communication

along the Southern Cross NEXT cable. Thus, by entering into a contract to install 1620 SOFTNODE units in Los Angeles, ASN has sold, and offered for sale, Accused Instrumentalities for use within California. Moreover, to the extent that 1620 SOFTNODE units for Southern Cross NEXT have already been installed and operated within California, on information and belief, ASN has used such units in California (constituting direct infringement), and/or has induced the use of such units in California by its customer(s) (constituting indirect infringement). Thus, ASN's actions relating to Southern Cross NEXT constitute direct or indirect infringement of the Asserted Claims within California, which subjects ASN to personal jurisdiction.

24.     Similarly, according to a January 21, 2013 article in the industry publication "Offshore Energy," starting in 2013, ASN "carr[ied] out a major upgrade of a 9,600km trans-Pacific digital submarine cable system using advanced coherent technology," which "provide[d] direct connectivity from the Japanese east coast ***to California***." Ex. 3 (Offshore Energy article, available at https://www.offshore-energy.biz/alcatel-lucent-upgrades-subsea-cable-system-between-japan-and-california/) at 1. On information and belief, this involved installing 1620 SOFTNODE units within California. On information and belief, the installation or use of these 1620 SOFTNODE units occurred, and/or continued to occur, less than six years before the filing of this Complaint. Thus, ASN's activities relating to the 9,600km trans-Pacific cable constitute direct and/or indirect infringement of the Asserted Claims, which further subjects ASN to specific personal jurisdiction in California.

25.     On information and belief, ASN has conducted further infringing acts within California, less than six years before the filing of the complaint, including selling, offering for sale, importing, making, or using other 1620 SOFTNODE units within California, and/or inducing or contributing to other customers' use of 1620 SOFTNODE units within California. Core expects to uncover evidence of such infringing acts in discovery. These additional infringing acts further subject ASN to specific personal jurisdiction in California.

1950634

## **VENUE**

26.    Venue is proper over each Defendant in this judicial district under 28 U.S.C. §§ 1391 and/or 1400(b), for at least the following reasons:

<u>Comcast</u>

27.    Comcast maintains regular and established places of business in this district, including at least its facilities at:  (i) 685 East Betteravia Rd, Santa Maria, CA 93454; (ii) 1145 N H St Suite B, Lompoc, CA 93436; and (iii) 111 Universal Hollywood Dr, Los Angeles, CA 90068.

28.    On information and belief, Comcast has committed acts of direct infringement within this district, including by using Accused Instrumentalities in connection with its provision of telecommunication services to customers in this district, and by using Accused Instrumentalities directly within this district.

29.    Thus, venue is proper over Comcast under 28 U.S.C. § 1400(b), because Comcast has committed acts of infringement in this district, and because Comcast has regular and established places of business in this district.

<u>CenturyLink</u>

30.    CenturyLink maintains regular and established places of business in this district, including at least its facilities at:  (i) 14452 Franklin Ave, Tustin, CA 92780; (ii) 7 Mason, Irvine, CA 92618; 92507; (iii) 2461 W La Palma Ave, Anaheim, CA 92801; and (iv) 818 7th St #510, Los Angeles, CA 90017.

31.    On information and belief, CenturyLink has committed acts of direct infringement in this district, including by using Accused Instrumentalities in connection with its provision of telecommunication and/or data center services to retail and business customers within this district, and/or by using Accused Instrumentalities directly within this district.

32.    Thus, venue is proper over CenturyLink under 28 U.S.C. § 1400(b), because CenturyLink has committed acts of infringement in this district, and because it has regular and established places of business in this district.

1950634

Glaser Weil

## Google

33.   Google maintains regular and established places of business in this district, including at least its facilities at:   (i) 19510 Jamboree Road, Irvine, CA 92612; (ii) 340 Main Street, Los Angeles, CA 90291; and (iii) 12422 W. Bluff Creek Drive, Playa Vista, CA 90094.

34.   On information and belief, Google has committed acts of direct infringement in this district, including by using Accused Instrumentalities in connection with its provision of telecommunication and/or data services to customers in this district, and/or by using Accused Instrumentalities directly within this district.

35.   Thus, venue is proper over Google under 28 U.S.C. § 1400(b), because Google has committed acts of infringement in this district, and because it has regular and established places of business in this district.

## Zayo

36.   Zayo maintains regular and established places of business in this district, including at least its facilities located at: (i) 17400 Von Karman Ave, Irvine, CA 92614; and (ii) 707 Wilshire Blvd # 4850, Los Angeles, CA 90017.

37.   On information and belief, Zayo has committed acts of direct infringement in this district, including by using Accused Instrumentalities in connection with its provision of telecommunication and/or data center services to retail and business customers within this district, and/or by using Accused Instrumentalities directly within this district.

38.   Thus, venue is proper over Zayo under 28 U.S.C. § 1400(b), because Zayo has committed acts of infringement in this district, and because it has regular and established places of business in this district.

## Cox

39.   Cox maintains regular and established places of business in this district, including at least its facilities located at: (i) 1542 N El Camino Real, San Clemente, CA 92672; (ii) 27321 La Paz Rd Suite B, Laguna Niguel, CA 92677; (iii) 23704 El

1950634

Toro Rd, Lake Forest, CA 92630; (iv) 6771 Quail Hill Pkwy, Irvine, CA 92603; (v) 6234 Irvine Blvd, Irvine, CA 92620; (vi) 27121 Towne Centre Dr, Foothill Ranch, CA 92610; and (vii) 30652 Santa Margarita Pkwy, Rancho Santa Margarita, CA.

40.     On information and belief, Cox has committed acts of direct infringement in this district, including by using Accused Instrumentalities in connection with its provision of telecommunication and/or data center services to retail and business customers within this district, and/or by using Accused Instrumentalities directly within this district.

41.     Thus, venue is proper over Cox under 28 U.S.C. § 1400(b), because Cox has committed acts of infringement in this district, and because it has regular and established places of business in this district.

ASN

42.     Venue is proper over ASN in this district under 28 U.S.C. § 1391(c)(3), because ASN is a foreign (French) corporation.

**THE ASSERTED PATENT**

43.     Mark Core, the sole named inventor of the '211 patent, earned his Ph.D. in electrical and computer engineering from the University of California, Irvine, and is the Manager of Core Optical Technologies, LLC. The pioneering technology set forth in the '211 patent greatly increases data transmission rates in fiber optic networks, by enabling two optical signals transmitted in the same frequency band, but at generally orthogonal polarizations, to be recovered at a receiver. The patented technology that enables the recovery of these signals includes coherent optical receivers and related methods that mitigate cross-polarization interference associated with the transmission of the signals through the fiber optic network. The coherent receivers and their patented methods mitigate the effects of polarization dependent loss and dispersion effects that limit the performance of optical networks, greatly increasing the transmission distance and eliminating or reducing the need for a variety of conventional network equipment such as amplifiers, regenerators, and

Glaser Weil

1950634

compensators. The patented technology set forth in the '211 patent has been adopted by Defendants in, at least, their packet-optical transport solutions described below.

44.    On November 5, 1998, Mark Core filed with the United States Patent and Trademark Office ("USPTO") Provisional Patent Application No. 60/107,123 ("the '123 application") directed to his inventions. On November 4, 1999, Mark Core filed with the USPTO a non-provisional patent application, U.S. Patent Application No. 09/434,213 ("the '213 application"), claiming priority to the '123 application. On August 24, 2004, the USPTO issued the '211 patent from the '213 application. The entire right, title, and interest in and to the '211 patent, including all rights to past damages, has been assigned to Core in an assignment recorded with the USPTO.

45.    The Asserted Claims of the '211 patent are all method claims. One of these is claim 33, an independent method claim. Claim 33 is reproduced below, with parenthetical annotations to identify the different elements of the claim:

> 33. A method comprising:
>
> > (33a) receiving an optical signal over a single fiber optic transmission medium,
> >
> > > (33a1) the optical signal being at least two polarized field components independently modulated with independent information bearing waveforms; and
> >
> > (33b) mitigating cross polarization interference associated with the at least two modulated polarized field components to reconstruct the information bearing waveforms
> >
> > > (33b1) using a plurality of matrix coefficients being complex values to apply both amplitude scaling and phase shifting to the at least two modulated polarized field components.

Glaser Weil

## CORE'S LAWSUIT AGAINST NOKIA

46.     On November 12, 2019, Core filed a complaint against Nokia Corporation and Nokia of America Corporation (collectively, "Nokia"), asserting infringement of the Asserted Claims of the '211 patent, in the Central District of California. The case was assigned C.D. Cal. Case No. 19-v-02190 (the "*Nokia* case").

47.     On February 21, 2020, Core filed a First Amended Complaint against Nokia. *See Nokia*, Dkt. 37.

48.     On March 27, 2020, Core filed a Second Amended Complaint against Nokia (the "Nokia SAC"). *Nokia*, Dkt. 42. The Nokia SAC is Core's operative complaint in the *Nokia* case. A copy of the Nokia SAC is attached as Exhibit 4.

49.     In the Nokia SAC, Core asserts that Nokia has infringed the Asserted Claims, directly and/or indirectly, by making, selling, using, importing, offering for sale, contributing to, and/or inducing its customers' use of certain "Fiber Optic XPIC Devices." Ex. 4, ¶¶ 35-36, 72-110. The Fiber Optic XPIC Devices are defined as Nokia's "devices that can be configured to mitigate and/or cancel cross polarization interference in received fiber optic signals . . . [t]hese devices include, but are not limited to, the 1830 Photonic Service Switch product family (the '1830 PSS Family'), the 1830 Photonic Service Interconnect product family (the '1830 PSI Family'), the 1620 SOFTNODE product family (the '1620 SOFTNODE Family'), and the WaveLite Metro 200 (the 'Metro 200')" (the "Accused Instrumentalities").

50.     As shown in the Nokia SAC, when the Fiber Optic XPIC Devices are used in their ordinary, intended fashion, such use constitutes direct infringement of the Asserted Claims of the '211 patent. *See* Ex. 4, ¶¶ 35-66.

## CUSTOMER DEFENDANTS' INFRINGING USE

51.     On information and belief, Comcast, CenturyLink, Google, Zayo, and Cox (collectively, the "Customer Defendants"), and/or their affiliates (including some or all of DOES 1-10), directly infringed each Asserted Claim of the '211 patent, by using one or more of the Fiber Optic XPIC Devices within the United States, less than

1950634

six years before the filing of this Complaint, and prior to the November 4, 2019 expiration date of the '211 patent (the "Relevant Time Period").

52.     On information and belief, each Customer Defendant purchased one or more of the Fiber Optic XPIC Devices from Nokia, and used such Fiber Optic XPIC Devices within the United States, during the Relevant Time Period. For the reasons set forth in Paragraphs 35-66 of the Nokia SAC, which are incorporated herein by reference in their entirety, such use constituted direct infringement of the Asserted Claims of the '211 patent by the Customer Defendants.

53.     As for Comcast, the LinkedIn page of Comcast Optical Transport Engineer Ken Tiv indicates that, while working for Comcast from 2010-Present, Mr. Tiv was "Responsible for Planning & Design, Implementation, Maintenance, Testing and Troubleshoot[ing] of end-to-end 10/100/200/400G Wavelogic4 on . . . [the] ***Nokia PSS1830***." https://www.linkedin.com/in/ken-tiv-14435bb/. This confirms that Comcast used the Nokia PSS 1830—one of the accused Fiber Optic XPIC Devices— within the United States during the relevant time period.

54.     As for CenturyLink, the LinkedIn page of CenturyLink Senior Implementation Engineer Jeffrey Collins indicates that, while working for CenturyLink from 2010-Present, Mr. Collins was "[r]esponsible for deployment of nationwide Long Haul networks (Huawei, Infinera, ***Nokia***, and Ciena 6500)," including the "***Nokia 1830***." https://www.linkedin.com/in/jeffrey-collins-0676611/. This confirms that CenturyLink used the Nokia PSS 1830—one of the accused Fiber Optic XPIC Devices—within the United States during the relevant time period.

55.     As for Google, the LinkedIn page of Google's Transport Control Center Engineer Adrian Pigott indicates that, from June 2017-Present, the "Google Global Optical Network Infrastructure" includes "Alcatel 1830 PSS" units. https://www.linkedin.com/in/adrian-pigott-3b8759140/?originalSubdomain=ie. The 1830 PSS is one of the accused Fiber Optic XPIC Devices. On information and belief, Google has installed and used such Fiber Optic XPIC Devices, including the 1830

Glaser Weil

1950634

1   PSS and related devices, within the United States during the Relevant Time Period.

2       56.    As for Zayo, the LinkedIn page of Zayo's Wave Engineering engineer

3   Charles Hogarty indicates that, while working for Zayo from 2019-Present, Mr.

4   Hogarty performed "Circuit/Path design and turn up of . . . *Nokia/FLEX 1830 PSS* .

5   . . shelves/cards/platforms/filters." https://www.linkedin.com/in/charles-hogarty/. This

6   confirms that Zayo used the Nokia PSS 1830—one of the accused Fiber Optic XPIC

7   Devices—within the United States during the relevant time period.

8       57.    As for Cox, a website for the SRxPerts & AON Tech Summit Americas

9   2016 conference (Ex. 5) indicates that, as of 2016, Cox was using a "Nokia-based

10  business network." *Id.* at 7. On information and belief, the "Nokia-based business

11  network" used by Cox includes accused Fiber Optic XPIC Devices. Thus, Cox has

12  used accused Fiber Optic XPIC Devices in the U.S. during the Relevant Time Period.

13      58.    Accordingly, each Customer Defendant has used accused Fiber Optic

14  XPIC Devices within the United States during the Relevant Time Period. For the

15  reasons set forth in Paragraphs 35-66 of the Nokia SAC—which are incorporated

16  herein by reference—such use constitutes direct infringement of the Asserted Claims.

17  Thus, each Customer Defendant has committed direct infringement of the Asserted

18  Claims within the Relevant Time Period.

19                          **ASN'S INFRINGEMENT**

20      59.    On information and belief, ASN has directly infringed each Asserted

21  Claim of the '211 patent within the Relevant Time Period. Such direct infringement

22  includes, on information and belief:  (i) ASN's direct use of accused Fiber Optic

23  XPIC Devices, including 1620 SOFTNODE devices, within the United States; (ii)

24  ASN's direct use of accused Fiber Optic XPIC Devices, including 1620 SOFTNODE,

25  outside the United States, but for use in telecommunication paths that pass through

26  the United States; (iii) ASN's joint use, together with its customers or other third

27  parties, of Fiber Optic XPIC Devices (including 1620 SOFTNODE) in the United

28  States; and (iv) ASN's use, through contractors, agents, or other third parties under its

Glaser Weil

1950634

direction or control, of Fiber Optic XPIC Devices, either within the United States, or outside it, but for use in telecommunication paths that pass through the United States.

60.     On information and belief, ASN has also indirectly infringed each Asserted Claim of the '211 patent, for the reasons set forth in Paragraphs 79-95 *infra*.

## **MARKING**

61.     Core has never made, sold, used, offered to sell, or imported into the United States any article that practices any claim of the '211 Patent. Core has never sold, commercially performed, or offered to commercially perform any service that practices any claim of the '211 Patent.

62.     Prior to October 21, 2014, Core had never authorized, licensed, or in any way permitted any third party to practice any claim of the '211 Patent.

63.     Moreover, Core alleges that Defendants infringe ***only*** method claims of the '211 patent. Core does not allege that Defendants infringe any apparatus claims of the '211 patent. The marking requirement of 35 U.S.C. § 287(a) does not apply when a patentee only asserts infringement of method claims. *See Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316 (Fed. Cir. 2009); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1082-83 (Fed.Cir.1983).

64.     Because Core has never directly marketed any product or service that practices any of the claimed inventions of the '211 Patent, and no third party was authorized to practice any claimed inventions of the '211 patent prior to October 21, 2014, 35 U.S.C. § 287(a) cannot prevent or otherwise limit Core's entitlement to damages for acts of infringement that occurred prior to October 21, 2014.

65.     Because Core alleges that Defendants infringe only method claims of the '211 patent, 35 U.S.C. § 287(a) does not apply, even for acts of infringement that occurred after October 21, 2014. Thus, 35 U.S.C. § 287(a) does not limit Core's entitlement to damages against Defendants, in any way, for any period of time.

66.     In the *Nokia* case, the court has ruled that the marking requirement does not apply, because Core is asserting only method claims. *Nokia*, Dkt. 61 at 5-7.

1950634

**Glaser Weil**

1

## DEFENDANTS' KNOWLEDGE OF THE '211 PATENT

2   67.    On information and belief, and for the reasons set forth below, each

3   Defendant knew of the existence and relevance of the '211 patent when they

4   committed the infringing acts described in Paragraphs 51-60 above.

5   68.    On information and belief, each Defendant knew of the '211 Patent's

6   existence and relevance due to Core's filing of complaints for infringement of that

7   patent in: (1) Central District of California Case No. SACV 12-1872 AG, styled *Core*

8   *Optical Technologies, LLC v. Ciena Corporation, et al*. (filed October 29, 2012); (2)

9   Central District of California Case No. SACV 16-0437 AG, styled *Core Optical*

10   *Technologies, LLC v. Fujitsu Network Communications, Inc*. (filed March 7, 2016);

11   and (3) Central District of California Case No. SACV 8:17-cv-00548AG, styled *Core*

12   *Optical Technologies, LLC v. Infinera Corp*. (filed March 24, 2017).

13   69.    On information and belief, as major participants in the optical

14   networking industry, Defendants monitor patent lawsuits against other participants in

15   the industry. On information and belief, through such monitoring, Defendants knew

16   of—or were willfully blind to—the existence of the '211 Patent, due to Core's three

17   prior lawsuits against other industry suppliers/manufacturers. Through such

18   monitoring, Defendants knew—or were willfully blind—that normal use of the Fiber

19   Optic XPIC Devices infringes the '211 patent.

20   70.    Moreover, Defendants knew of the existence and relevance of the '211

21   patent because:  (i) the Customer Defendants are all Nokia customers for the Fiber

22   Optic XPIC Devices; and (ii) ASN is a Nokia subsidiary involved in making, selling,

23   using, installing, and operating the Fiber Optic XPIC Devices.

24   71.    As shown in Paragraphs 90-99 of the Nokia SAC, which are

25   incorporated by reference herein in their entirety, Nokia knew of the existence and

26   relevance of the '211 patent throughout the Relevant Time Period. On information

27   and belief, as Nokia customers and subsidiaries, the Defendants were made aware,

28   through Nokia, of the existence and relevance of the '211 patent during the Relevant

1950634

Time Period. Accordingly, on information and belief, each Defendant committed infringing acts while: (i) being aware of the '211 patent; and (ii) knowing that normal use of the Fiber Optic XPIC Devices infringes the Asserted Claims.

72.     This is further shown by the statements and evidence cited in Core's Opposition to Nokia's Motion to Dismiss, *Nokia* Case Dkt. 50, which is attached as Exhibit 6 to this Complaint. As shown in pages 15-21 of Exhibit 6, which are incorporated herein by reference in their entirety, Nokia also had knowledge of the existence and relevance of the '211 patent because: (i) its in-house patent counsel, John F. McCabe and E.J. Rosenthal, had specific personal knowledge of the '211 patent due to their patent prosecution activities on behalf of Nokia; and (ii) Nokia was apprised of the existence and relevance of the '211 patent through an October 15, 2007 letter from Core's counsel to Siemens, which—on information and belief—was disseminated to Nokia through Nokia Siemens Networks. Ex. 6 at 15-21.

73.     On information and belief, Nokia apprised both the Customer Defendants and ASN of the existence and relevance of the '211 patent prior to, or during, the Relevant Time Period. Thus, on information and belief, all Defendants committed infringing acts with knowledge of its existence and relevance.

## JOINDER

74.     Joinder of all Defendants is proper under 35 U.S.C. § 299(a).

75.     Core accuses all Defendants of infringing the Asserted claims by making, selling, using, offering for sale, or importing the Fiber Optic XPIC Devices. Thus, Core's "right to relief" against all Defendants arises out of Defendants' "making, using, importing into the United States, offering for sale, or selling of the ***same accused product or process***," as required by 35 U.S.C. § 299(a)(1).

76.     Moreover, "questions of fact common to all defendants . . . will arise in the action," as required by 35 U.S.C. § 299(a)(2). These include, at least: (i) questions as to whether use of the Fiber Optic XPIC Devices infringes the Asserted Claims; and (ii) questions relating to the value of the patented technology to those Devices.

1950634

77.     Thus, joinder of all Defendants is proper under 35 U.S.C. § 299(a).

**COUNT I – DIRECT PATENT INFRINGEMENT (ALL DEFENDANTS)**

78.     Core repeats and realleges each and every allegation contained in Paragraphs 1-77 above as if fully set forth herein.

79.     Each Customer Defendant has committed direct infringement of each Asserted Claim of the '211 patent, in violation of 35 U.S.C. § 271(a), by performing all the steps of each Asserted Claim in the U.S., during the Relevant Time Period.

80.     As set forth in Paragraphs 51-58, each Customer Defendant used Fiber Optic XPIC Devices within the United States during the Relevant Time Period. For the reasons set forth in Paragraphs 35-66 of the Nokia SAC, which are incorporated herein by reference, such use constitutes direct infringement of each Asserted Claim of the '211 patent. Thus, each Customer Defendant has directly infringed each Asserted Claim of the '211 patent during the Relevant Time Period.

81.     ASN has also committed direct infringement of each Asserted Claim of the '211 patent, in violation of 35 U.S.C. § 271(a), by performing all the steps of each Asserted Claim during the Relevant Time Period.

82.     As set forth in Paragraphs 59-60 *supra*, during the Relevant Time Period, ASN has, on information and belief: (i) directly used Fiber Optic XPIC Devices, including 1620 SOFTNODE devices, within the United States; (ii) directly used Fiber Optic XPIC Devices, including 1620 SOFTNODE devices, outside the United States, but for use in telecommunication paths that pass through the United States; (iii) jointly used, together with its customers or other third parties, Fiber Optic XPIC Devices (including 1620 SOFTNODE devices) in the United States; and (iv) used, through contractors, agents, or other third parties under its direction or control, Fiber Optic XPIC Devices (including 1620 SOFTNODE), either within the United States, or outside it, but for use in telecommunication paths that pass through the United States. For the reasons set forth in Paragraphs 35-66 of the Nokia SAC, all such uses constitute direct infringement of the Asserted Claims of the '211 patent. Thus, ASN

1950634

directly infringed the Asserted Claims during the Relevant Time Period.

## COUNT II – INDUCEMENT OF INFRINGEMENT (ASN)

83.    Core repeats and realleges each and every allegation contained in Paragraphs 1-82 above as if fully set forth herein.

84.    ASN has actively induced infringement of the Asserted Claims of the '211 patent, in violation of 35 U.S.C. § 271(b).

85.    ASN has actively induced infringement of these claims by selling Fiber Optic XPIC Devices, including 1620 SOFTNODE, to customers in the U.S., along with documentation and instructions demonstrating how to use the devices to infringe the claims, and/or by providing service, maintenance, support, or other active assistance to their customers in using the Fiber Optic XPIC Devices in the United States. Those customers include, at least: (i) the customer(s) for the Southern Cross NEXT cable identified in Paragraph 23 *supra*; and (ii) the customer(s) for the 9,600km trans-Pacific digital identified in Paragraph 24 *supra*.

86.    ASN does not make its product documentation available to non-customers. However, on information and belief, this product documentation specifically instructs customers on how to use the Fiber Optic XPIC Devices, including 1620 SOFTNODE, in an infringing manner. Core expects that it will uncover such documentation through discovery in this case. Core reserves the right to amend this Complaint to identify such additional materials as they are uncovered through discovery, to the maximum extent permitted by law.

87.    As shown in Paragraphs 35-66 of the Nokia SAC, when ASN's customers use the Fiber Optic XPIC Devices in the U.S., such use meets all of the elements recited in the Asserted Claims. Thus, ASN has committed affirmative acts (i.e., selling the Fiber Optic XPIC Devices, providing documentation on how to use the Fiber Optic XPIC Devices, and/or providing service, maintenance, technical support, or other active assistance to their customers) which have resulted in direct infringement of the '211 Patent by their customers in the United States.

1950634

Glaser Weil

88.     Moreover, for the reasons set forth in Paragraphs 67-73 *supra*, ASN knew of the existence and relevance of the '211 Patent, or was willfully blind to its existence and relevance, when it committed these acts of inducement. Because ASN was aware of the '211 patent's relevance and existence, it knew that its customers' use of the Fiber Optic XPIC Devices would constitute infringement of that patent. Thus, when ASN sold Fiber Optic XPIC Devices to U.S. customers, and/or provided service, maintenance, technical support, or other active assistance to such customers, it did so with the specific intent to encourage the customers to perform acts constituting direct infringement of the '211 Patent. ASN's decision to continue marketing the Fiber Optic XPIC Devices to U.S. customers, despite knowing that such customers' use would constitute direct infringement, evidences that ASN had a specific intent to encourage direct infringement of the '211 patent by its customers.

89.     Therefore, ASN has unlawfully induced infringement of the '211 Patent, in violation of 35 U.S.C. § 271(b).

## COUNT III – CONTRIBUTORY INFRINGEMENT (ASN)

90.     Core repeats and realleges each and every allegation contained in Paragraphs 1-89 *supra*, as if fully set forth herein.

91.     ASN has committed contributory infringement of the Asserted Claims of the '211 Patent, in violation of 35 U.S.C. § 271(c).

92.     ASN has committed contributory infringement by selling, offering to sell and/or importing into the United States the Fiber Optic XPIC Devices, including SOFTNODE 1620. As shown in Paragraphs 35-66 of the Nokia SAC*,* the Fiber Optic XPIC Devices contain components which, as configured, perform cross-polarization interference mitigation on polarization-multiplexed optical signals. These components, when used as configured during normal operation, practice the inventions claimed in the Asserted Claims.

93.     The components of the Fiber Optic XPIC Devices that perform cross-polarization interference mitigation practice a material part of the Asserted Claims,

1950634

because they perform one of the key inventive functions of the '211 Patent – i.e., they mitigate the effects of cross-polarization interference, using matrix operations, to reconstruct the original polarization-division-multiplexed signals.

94.     On information and belief, prior to the filing of the Complaint, ASN had actual knowledge, or was willfully blind, that these components of the Fiber Optic XPIC Devices (including 1620 SOFTNODE) were especially made or adapted for use in a manner that infringes the Asserted Claims of the '211 Patent. As shown in Paragraphs 67-73 *supra*, ASN knew, or was willfully blind, that the Fiber Optic XPIC Devices are configured to infringe the '211 Patent upon use, at least because of: (i) Core's prior litigations against others in the optical networking industry; (ii) Nokia's six separate patents, in which the '211 Patent was cited as prior art; and (iii) the October 2007 notice letter. For the reasons set forth in Paragraphs 67-73, and on information and belief, ASN knew, or was willfully blind, that normal use of the Fiber Optic XPIC Devices infringes the Asserted Claims of the '211 Patent. Despite that knowledge (or willful blindness), ASN actively sold the Fiber Optic XPIC Devices in the United States, knowing that their customers would use the Fiber Optic XPIC Devices in the United States, and knowing (or being willfully blind) that such use would constitute direct infringement of the Asserted Claims.

95.     The components of the Fiber Optic XPIC Devices that are configured to perform cross-polarization interference mitigation are not staple articles of commerce, and—as configured to perform cross-polarization interference mitigation during normal operation—are not capable of substantial noninfringing use. To the contrary, these components, as configured, are ***especially adapted*** to perform the claimed cross-polarization interference mitigation methods, during normal use.

96.     For example, the Fiber Optic XPIC Devices include the D5X500 Subsea line card. Ex. 7 at 2. On information and belief, the D5X500 Subsea can be used with the 1620 SOFTNODE to create an optical transport network. *Id*. According to the D5X500 Datasheet, the D5X500 Subsea can "us[e] six different multi-modulation

formats." *Id.* These formats are summarized in the following table (Ex. 4 at 3):

| Line capacity (per port) | | |
|---|---|---|
| | 250G | DP-16QAM |
| | 200G | DP-16QAM |
| | 200G | DP-8QAM |
| | 100G | DP-QPSK |
| | 100G | SP-DP-QPSK (set partition) |
| | 50G | DP-BPSK |

97.     As seen above, ***all six*** of the available modulation formats for the D5X500 Subsea use "DP" – i.e., ***dual polarization*** modulation. Thus, the D5X500 Subsea card, as configured, ***always*** uses dual polarization modulation. As discussed above, when a card uses dual polarization modulation, it necessarily infringes the Asserted Claims. Thus, the D5X500 Subsea card has no non-infringing use:  in ***every*** mode of operation, it practices the asserted claims. Accordingly, at least when they are used with the D5X500 Subsea card (as configured), the Fiber Optic XPIC Devices (including 1620 SOFTNODE) are not capable of substantial non-infringing use.

98.     On information and belief, there are additional line cards, interface cards, transceivers, and other components within the Fiber Optic XPIC Devices that lack substantial non-infringing uses. Core expects that much of the information about these components is non-public. Core expects that, through discovery, it may uncover additional evidence regarding components of the Fiber Optic XPIC Devices that, as configured, are incapable of substantial non-infringing use. Core reserves the right to amend this Complaint to identify such additional components as they are uncovered in discovery, to the maximum extent permitted by law.

99.     Accordingly, ASN has unlawfully contributed to infringement of the '211 Patent, in violation of 35 U.S.C. § 271(c).

## REMEDIES, ENHANCED DAMAGES, EXCEPTIONAL CASE

100.     Core repeats and realleges each and every allegation contained in Paragraphs 1-99 *supra*, as if fully set forth herein.

101.     Defendants' direct infringement (Count I), induced infringement (Count II), and contributory infringement (Count III) of the '211 patent has caused, and will

1950634

continue to cause, significant damage to Core. As a result, Core is entitled to an award of damages adequate to compensate it for Defendants' infringement, but in no event less than a reasonable royalty pursuant to 35 U.S.C. § 284. Core is also entitled to recover prejudgment interest, post-judgment interest, and costs.

102.  For at least the reasons set forth in Paragraphs 67-73 *supra*, prior to the filing of this Complaint, Defendants knew (or were willfully blind) that the Fiber Optic XPIC Devices are configured to infringe the Asserted Claims of the '211 Patent during normal use. Despite this known, objectively-high risk that their actions constituted direct and indirect infringement, Defendants continued to directly and indirectly infringe the '211 patent, up to the filing of this Complaint. Accordingly, Defendants' infringement has been (and is) willful.

103.  In addition to being willful, Defendants' conduct has been egregious.

104.  As set forth in Paragraphs 67-73 *supra*, despite knowing of (or being willfully blind to) their infringement, Defendants continued to infringe, on a large scale, until the '211 patent expired. Defendants are large companies with hundreds of millions, or billions, of dollars in annual revenue. Meanwhile, Plaintiff is a small company, owned by an individual inventor. On information and belief, Defendants persisted in their willful infringement, at least in part, because they believed they could use their superior resources to overwhelm Plaintiff in litigation. If proven, this would constitute "egregious" conduct, warranting enhanced damages.

105.  Moreover, the validity of the '211 patent has been twice confirmed by the Patent Trial and Appeal Board ("PTAB"), in:  (i) IPR2016-01618, filed by Fujitsu Network Communications, Inc.; and (ii) IPR2018-01259, filed by Infinera Corporation. In both *Inter Partes* Review proceedings, the Petitioners—who were defendants in prior litigations—cited numerous prior art references, to attempt to establish that claims of the '211 patent, including the Asserted Claims, were invalid. Yet, in both cases, the PTAB **denied** institution, finding that the Petitioners had failed to establish a "reasonable likelihood" that **any** claim of the '211 patent was invalid.

1950634

*See* Ex. 8 (decision denying review in IPR2016-01618); Ex. 9 (decision denying review in IPR2018-01259). Because the PTAB has already rejected two extensive invalidity challenges to the '211 patent, Defendants cannot reasonably believe that they have a viable invalidity defense. Defendants' decision to persist in known, clearly-infringing conduct, despite the lack of any viable invalidity defense, is further evidence of "egregiousness," warranting an award of enhanced damages.

106.   For at least the foregoing reasons, Defendants' conduct has been willful and egregious. Accordingly, under 35 U.S.C. § 284, the Court should enhance Core's damages in this case by up to three times the amount found or assessed.

107.   For at least the foregoing reasons, this case is an "exceptional" case within the meaning of 35 U.S.C. § 285. Accordingly, Core is entitled to an award of attorneys' fees and costs, and the Court should award such fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Core prays for relief as follows:

1.    That judgment be entered in favor of Core, and against Defendants;

2.    That Core be awarded damages adequate to compensate it for Defendants' infringement of the Asserted Claims of the '211 Patent, in an amount to be determined at trial, as well as interest thereon;

3.    That Core be awarded the costs of suit;

4.    That Defendants' infringement be declared willful and egregious;

5.    That the Court increase Core's damages up to three times the amount assessed under 35 U.S.C. § 284;

6.    That the Court declare this an exceptional case under 35 U.S.C. § 285, and award Core its attorneys' fees and costs incurred in this action; and

7.    That the Court grant such further relief as it deems just and proper.

## **JURY TRIAL DEMAND**

Core demands a jury trial on all issues so triable.

1950634

1

2 DATED: January 11, 2021      GLASER WEIL FINK HOWARD
AVCHEN & SHAPIRO LLP

3

4         By:    */s/Lawrence M. Hadley*

5           LAWRENCE M. HADLEY

6           STEPHEN E. UNDERWOOD

7           Attorneys for Plaintiff
Core Optical Technologies, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Glaser Weil

1950634