# Exhibit 6

LAWRENCE M. HADLEY - State Bar No. 157,728
lhadley@glaserweil.com
STEPHEN E. UNDERWOOD - State Bar No. 320,303
sunderwood@glaserweil.com
GLASER WEIL FINK HOWARD
   AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:   (310) 556-2920

LAWRENCE R. LAPORTE, State Bar No. 130,003
Lawrence.LaPorte@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Plaintiff
Core Optical Technologies, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CORE OPTICAL TECHNOLOGIES, LLC,<br><br>             Plaintiff,<br><br>v.<br><br>NOKIA CORPORATION, a Finnish Corporation, NOKIA OF AMERICA CORPORATION, a Delaware Corporation, and DOES 1 through 10, inclusive,<br><br>             Defendants. | CASE NO: 8:19-cv-2190-JAK-RAO<br><br>**PLAINTIFF CORE OPTICAL TECHNOLOGIES, LLC's OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Hearing Date:  July 13, 2020<br>Time: 8:30 a.m.<br>Location:  Courtroom 10B<br><br>Hon. John A. Kronstadt |

1838758

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................. 1

II.  ARGUMENT ........................................................................................ 2

    A.   The Marking Statute Does Not Apply ................................................ 2

    B.   Defendants Do Not Properly Identify Any Third-Party Products
         That Require Marking ........................................................................ 13

    C.   The SAC States a Claim for Induced and Contributory
         Infringement ...................................................................................... 14

         1.   Core Has Adequately Pled Knowledge of the Patent ............... 15

         2.   Core Has Adequately Pled Knowledge of Infringement .......... 17

    D.   Core Has Adequately Pled Personal Jurisdiction Over Nokia Corp. . 21

III. CONCLUSION ................................................................................... 25

Glaser Weil

1838758

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ActiveVideo Networks v. Verizon Commc'ns*,
   694 F.3d 1312 (Fed. Cir. 2012) ......................................................... 9, 10

*Advanced Software Design Corp. v. Fiserv, Inc.*,
   641 F.3d 1368 (Fed. Cir. 2011) .............................................................. 17

*Am. Med. Sys. v. Med. Eng'g Corp.*,
   6 F.3d 1523 (Fed. Cir. 1993) ........................................................... 3, 5, 9

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
   876 F.3d 1350 (Fed. Cir. 2017) ..................................................... 12, 13, 14

*Arctic Cat, Inc. v Bombardier Recreational Products. Inc.*,
   950 F.3d 860 (Fed. Cir. 2020) ......................................................... 11, 12

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
   552 F.3d 1324 (Fed. Cir. 2008) ....................................................... 22, 25

*Baker Hughes, Inc. v. Davis-Lynch, Inc.*,
   No. CIV.A. H-97-2905, 2000 WL 33993301 (S.D. Tex. June 22,
   2000) ............................................................................................. 16, 20

*Clerkin v. MyLife.com, Inc.*,
   No. C 11-00527 CW, 2011 WL 3607496 (N.D. Cal. Aug. 16, 2011) .............. 24

*Coca–Cola Co. v. Pepsico, Inc.*,
   No. 02 Civ. 2887(RWS), slip op. (N.D. Ga. Sept. 29, 2004) ............................ 12

*Commil USA, LLC v. Cisco Sys.*,
   135 S. Ct. 1920 (2015) .................................................................... 17, 21

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
   498 F. Supp. 2d 718 (D. Del. 2007) .............................................. 6, 8, 14

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
   559 F.3d 1308 (Fed. Cir. 2009) ................................................... *passim*

**Glaser Weil**

CORE OPTICAL'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1838758

*Cywee Grp. Ltd. v. Huawei Device Co.*,
    No. 2:17-CV-495-WCB, 2018 WL 3819392 (E.D. Tex. Aug. 10,
    2018) (Bryson, C.J.) ................................................................. 18, 19

*In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*,
    735 F. Supp. 2d 277 (W.D. Pa. 2010) ........................................... 24

*Finjan, Inc. v. Sophos, Inc.*,
    No. 14-CV-01197-WHO, 2015 WL 7075573 (N.D. Cal. Nov. 13,
    2015) ............................................................................................ 15

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
    438 F.3d 1354 (Fed. Cir. 2006) ..................................................... 19

*Goodbreak, LLC v. Hood By Air, LLC*,
    No. CV1503897DDPASX, 2016 WL 146418 (C.D. Cal. Jan. 12,
    2016) ........................................................................................ 21, 22

*Hanson v. Alpine Valley Ski Area, Inc.*,
    718 F.2d 1075 (Fed. Cir. 1983) ............................................*passim*

*Huawei Techs. Co. Ltd. v. T-Mobile US, In*c.,
    No. 2:16-CV-0052-JRG-RSP, 2017 U.S. Dist. LEXIS 15383 (E.D.
    Tex. Sep. 4, 2017) ......................................................................... 11

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ......................................................... 16

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996) ...................................................................... 14

*Merck & Co. Inc. v. MediPlan Health Consulting, Inc.*,
    434 F. Supp. 2d 257 (S.D.N.Y 2006) ........................................ 12, 13

*In re Nazi Era Cases Against German Defendants Litig.*,
    320 F. Supp. 2d 204 (D.N.J. 2004) ................................................ 24

*Nazomi Commc'ns, Inc. v. Nokia Corp.*,
    No. SACV10151DOCRNBX, 2010 WL 11509140 (C.D. Cal. Oct.
    12, 2010) ................................................................................... 24, 25

*NexLearn v. Allen Interactions, Inc.*,
    859 F.3d 1371 (Fed. Cir. 2017) ..................................................... 24

Glaser Weil

iii

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
    853 F.3d 1370 (Fed. Cir. 2017) ............................................................... 11

*Ricoh Co. v. Quanta Computer Inc.*,
    550 F.3d 1325 (Fed. Cir. 2008) .................................................... 17, 18, 21

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ............................................................. 21, 22

*Stomp, Inc. v. NeatO*,
    LLC, 61 F. Supp. 2d 1074 (C.D. Cal. 1999) .......................................... 23

*Teva Pharma. USA, Inc. v. Sandoz, Inc.*,
    574 U.S. 318 (2015) ................................................................................ 14

*Valutron, N.V. v. NCR Corp.*,
    No. C-3-81-444, 1992 WL 698780 (S.D. Ohio Aug. 18, 1992) .......... 16, 20

*Veritas Operating Corp. v. Microsoft Corp.*,
    562 F. Supp. 2d 1141 (W.D. Wash. 2008) ............................................. 15

**Statutes**

35 U.S.C. § 271 ................................................................................................ 13

35 U.S.C. § 287(a) ...................................................................................... *passim*

**Other Authorities**

37 C.F.R. § 1.56(a) ......................................................................................... 17

Glaser Weil

CORE OPTICAL'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1838758

# I.     **INTRODUCTION**

While pursuing his Ph.D at UC Irvine, the inventor of U.S. Patent No. 6,782,211 ("the '211 Patent"), Mark Core, developed a groundbreaking technology that is fundamental to our modern, connected world. Defying conventional wisdom, Dr. Core invented a pioneering technique for mitigating or cancelling "cross polarization interference" (XPI), for use in optical receiving devices referred to as "cross polarization interference cancelers" (XPICs), which permitted two optical signals to be sent along the same optical fiber, at the same time, and in the same frequency band. Dkt. 42 (Second Amended Complaint) ("SAC"), ¶¶ 13-15. Dr. Core's technology *immediately more than doubled* the throughput that can be achieved in fiber-optic networks. *Id*. Dr. Core's technology has become "the de facto single technology of choice for long-haul 100Gbps transport." *See* Ex. G ("Juniper ADVA Packet Optical Convergence") at 6. Without Dr. Core's technology, the modern, broadband-connected world would not exist.

Defendants use and market the "Fiber Optic XPIC Devices," which are fiber-optic communication devices whose use clearly infringes the method claims of the '211 Patent. SAC, ¶¶ 35-66. Defendants seek to avoid liability for their infringement, because Core licensed three prior defendants to practice the '211 Patent without requiring them to mark their products with the '211 Patent number. But it is settled law that where, as here, *only method claims* of a patent are asserted, marking is not a prerequisite to patent damages, because it is not possible to "mark" a "method." Defendants ask this Court to overturn that settled rule of law, which is set forth in binding Federal Circuit precedent. But the Federal Circuit's precedent must be followed, and Defendants' motion to dismiss for lack of "marking" must be denied.

Defendants also seek to dismiss Core's claims of indirect infringement, because Core allegedly has not adequately pled pre-suit knowledge of the '211 Patent, or pre-suit knowledge of infringement by Defendants' customers. Defendants are mistaken. Core's allegations *conclusively* establish that Defendants had pre-suit knowledge of

CORE OPTICAL'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Glaser Weil

1838758

the '211 Patent, and plausibly establish that they knew their customers' use of the Fiber Optic XPIC Devices infringes the Asserted Claims. Thus, Defendants' motion to dismiss Core's indirect infringement claims must also be denied.

## II.    ARGUMENT

### A.    The Marking Statute Does Not Apply

Core's SAC is not subject to dismissal for failure to mark. Indeed, Core need not "plead compliance" with the patent marking statute, 35 U.S.C. § 287(a), to state a claim because Core asserts only method claims in this case.  Core's SAC (Dkt. 42), at Paragraphs 7 and 69, states this settled rule of law:

> 7.   This is an action for infringement of method claims, and *only* method claims, of U.S. Patent No. 6,782,211 … (the '211 patent").  The asserted claims in this case are *only* method claims 30, 32, 33, 35 and 37 of the '211 patent ("the Asserted Claims").
>
> * * *
>
> 69. Moreover, Core alleges that Defendants infringe **only** method claims of the '211 patent.  Core does not allege that Defendants infringe any apparatus claims of the '211 patent.  The marking requirement of 35 U.S.C. § 287(a) does not apply when a patentee only asserts infringement of method claims.

The Federal Circuit's *Crown Packaging* and *Hanson* decisions, which have been binding precedent for 37 years, confirm that the patent marking statue, 35 U.S.C. § 287(a), ***does not apply*** where, as here, only method claims are being asserted. *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co*., 559 F.3d 1308, 1316 (Fed. Cir. 2009) ("In *Hanson*, 718 F.2d at 1082-83, we **held** that 35 U.S.C. § 287(a) ***did not apply*** where the patentee only ***asserted*** the method claims of a patent which included both method and apparatus claims") (emphasis added); *Hanson v. Alpine Valley Ski Area, Inc*., 718 F.2d 1075, 1082-83 (Fed. Cir. 1983) (in a case where the asserted patent included both apparatus and method claims, the Federal Circuit **held** it is

1838758

1  "settled in the case law that the notice requirement of this statute ***does not apply***

2  where the [infringed claims are] directed to a process or method") (emphasis added).

3        Defendants' motion to dismiss, along with their recently filed Reply in Support

4  of their Motion to Stay Discovery ("Reply") (Dkt. 49), entirely ignores these

5  dispositive *holdings,* and argues—contrary to the express language of *Crown*

6  *Packaging*—that it is not the asserted claims that matter, but that "…the marking

7  statute applies to a patent that contains both apparatus and method claims (a

8  'combined patent') where there is a tangible item to mark, regardless of what claims

9  are asserted in litigation." Dkt. 49 at 2. Defendants are wrong. Defendants' argument

10 is directly contrary to the holdings of both *Hanson* and *Crown Packaging.*

11       Rather than address *Crown Packaging* and *Hanson*, Defendants rely on

12 *American Medical*, a case decided after *Hanson* but before *Crown Packaging*. But

13 that case neither overturned *Hanson* nor conflicts with the later binding precedent in

14 *Crown Packaging*. And, contrary to Defendants' suggestion in its Reply, *American*

15 *Medical* did not create an "exception" to the marking rule set forth in *Hanson*.

16       Defendants' arguments regarding *American Medical* ignore the facts of that

17 case. Unlike here, *American Medical* involved an appeal where <u>both</u> apparatus and

18 method claims were asserted in the district court. *Am. Med. Sys. v. Med. Eng'g Corp.*,

19 6 F.3d 1523, 1538-39 (Fed. Cir. 1993). Because apparatus claims were asserted, the

20 bright-line rule of *Crown Packaging* and *Hanson—i.e.*, that the notice statute does not

21 apply when only method claims are asserted—could not apply in *American Medical.*

22 *American Medical*, 6 F.3d at 1538-39 ("In this case, ***both apparatus and method***

23 ***claims*** of the '765 patent ***were asserted*** and there was a physical device produced by

24 the claimed method that was capable of being marked.") (emphasis added). With

25 entirely different facts, *American Medical* created a rule applicable when both method

26 and apparatus claims are asserted. *American Medical* could not have, and did not,

27 create an exception to *Hanson* where only method claims are alleged to infringe.

28       Moreover, *American Medical* (1993) was decided after *Hanson* (1983). Thus, it

Glaser Weil

3

1838758

Case 8:19-cv-02190-JAK-RAO Document 50 Filed 08/18/20 Page 9 of 32 Page ID #:3004

1    cannot overrule the established law of *Hanson*, later reaffirmed by the Federal Circuit

2    in *Crown Packaging*. *Crown Packaging*, 559 F.3d at 1316 ("*Hanson* is factually

3    identical to this case, and we are therefore bound by the rule of *Hanson*.") That

4    *Hanson* remains the law—i.e., that what matters is whether only method claims are

5    ***asserted***—was expressly reaffirmed in *Crown Packaging*. And, not only did the

6    *Crown Packaging* court confirm the rule of *Hanson*, it fully distinguished *American*

7    *Medical* on the grounds that what matters is only whether apparatus claims are

8    ***asserted***—rejecting the very argument Defendants now make:

9        In *American Medical Systems, Inc. v. Medical Engineering*

10       *Corp*., 6 F.3d 1523 (Fed. Cir. 1993), we explained:

11           The purpose behind the marking statute is to encourage the

12           patentee to give notice to the public of the patent. The reason that

13           the marking statute does not apply to method claims is that,

14           ordinarily, where the patent claims are directed to a method or

15           process there is nothing to mark. Where the patent contains both

16           apparatus and method claims, however, to the extent there is a

17           tangible item to mark by which notice of the asserted method

18           claims can be given, a party is obliged to do so it intends to avail

19           itself of the construction notice provisions of section 287(a).

20       As the *American Medical* opinion goes on to explain:

21           In this case, both *apparatus and method claims* of the 765

22           patent were asserted and there was a physical device produced by

23           the claimed method capable of being marked. Therefore, we

24           conclude that AMS was required to mark its product pursuant to

25           section 287(a) in order to recover damages under its method claims

26           prior to actual or constructive notice being given to MEC.

27       *Id*. at 1539 (emphasis added). In this case and *Hanson*, the patentee ***only***

28       ***asserted method claims*** despite the fact that the patent contained both

CORE OPTICAL'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1838758

method and apparatus claims.  In *American Medical*, in contrast, "both apparatus and method claims of the 765 patent were asserted." *American Medical*, 6 F.3d at 1523.  ***Because Rexam asserted only the method claims . . . the marking requirement of 35 U.S.C. § 287(a) does not apply.*** *Crown Packaging*, 559 F.3d at 1317 (emphasis added).  Thus, the *Crown Packaging* holding squarely establishes that *American Medical* did ***not*** create an "exception" to *Hanson*. Rather, *Hanson* remains the law:  if a patentee only asserts method claims in a given case, the marking requirement does not apply.

Defendants focus on a passage from *American Medical* that refers to a "tangible item to mark." Dkt. 44-1 at 12; Dkt. 49 at 2-3. In *American Medical*, however, there were ***two*** necessary facts that caused the marking statute to apply:  (i) "both apparatus and method claims of the '765 patent were asserted;" ***and*** (ii) "there was a physical device produced by the claimed method that was capable of being marked." *Am. Med*, 6 F.3d at 1539. The Federal Circuit used the conjunction ***"and"*** to affirm that ***both*** facts must be present before the marking requirement will apply. *Id.*

Here, neither of *American Medical*'s requisite facts are present.  First, Core is not asserting "both apparatus and method" claims; the SAC plainly asserts method claims only. Thus, regardless of whether there is a "tangible item to mark," the marking requirement does not apply. Second, Defendants fail to offer any evidence that Core's prior licensees sold a "physical device capable of being marked." And whether any licensee did so is a ***factual*** question, which turns on whether Core's licensees sold products that practice the apparatus claims of the '211 Patent. Without any evidence that Core's licensees sold products practicing the apparatus claims, Defendants' arguments on the second *American Medical* fact (which, alone, is insufficient anyway) cannot be resolved on a motion to dismiss.

Defendants ignore another critical fact in both *Hanson* and *Crown Packaging*. In both of those cases, the patentee asserted *only* method claims in "combined" patents having both types of claims, and the patents in both cases ***were previously***

CORE OPTICAL'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1838758

*licensed* to third parties. *Hanson*, 718 F.2d at 1076 ("Hanson licensed his patent to Snow Machines International ["SMI"]…. about 1,500 SMI machines have been manufactured and sold"); *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.,* 498 F. Supp. 2d 718, 722 (D. Del. 2007) ("Rexam and Belvac entered into a license agreement that covered the '839 patent in March 1993. The agreement gave Belvac a non-exclusive license to make, use and sell 'Licensed Machines'….").

Indeed, *Hanson* considered and rejected the very argument Defendants make here. The *Hanson* patent contained both method and apparatus claims, all of which were previously licensed, but *only* the method claims were asserted in litigation:

> Alpine states that the Hanson patent also includes apparatus claims. ***The only claims that were found infringed in this case, however, were claims 1, 2, and 6 of the Hanson patent, which are drawn to '[t]he method of*** forming, distributing and depositing snow upon a surface' . . . In affirming the district court's finding of infringement in this case, the court of appeals stated in the first sentence of its [prior] opinion that 'the patent alleged to be infringed is [for] ***a process*** for making snow for winter sports.' 611 F.2d at 157, 204 USPQ at 803-04. ***It is 'settled in the case law that the notice requirement of this statute does not apply where the patent is directed to a process or method.'*** *Bandag, Inc. v. Gerrard Tire Co*., 704 F.2d 1578, 1581, 217 USPQ 977, 979 (C.A. Fed. Cir. 1983).

*Hanson*, 718 F.2d at 1083 (emphasis added).  In ruling that the marking statute did not apply because only method claims were asserted, ***even though*** the patent-in-suit had been previously licensed, the Federal Circuit held as follows:

> ***Alpine contends that Hanson is precluded from recovering for the infringing use, prior to the filing of the complaint***, of two of the Hedco machines ***because Hanson did not prove that Hanson's licensee SMI had marked the machines it sold***, as 35 U.S.C. § 287

Glaser Weil

1    (1976) allegedly required . . .

2        ***The magistrate rejected the contention on two grounds***: (1) it

3    was untimely raised, since Alpine had not presented it in any pretrial

4    pleadings, and ***(2) the patent is a process patent, to which section 287***

5    ***does not apply. We agree with the latter ground of decision***.

6    *Hanson,* 718 F.2d at 1082 (emphasis added). These passages confirm that Section

7    287(a) marking did not apply in *Hanson,* even though Hanson's prior licensee, SMI,

8    ***had not marked*** the machines it sold. And to remove any doubt, the Federal Circuit

9    confirmed that the snow machines at issue had been previously licensed:

10        In 1969, ***Hanson licensed his patent*** to Snow Machines

11        International, which subsequently assigned the license to Snow

12        Machines Incorporated (both referred to as "SMI"), for a royalty of 2

13        1/2 percent of sales and 2 1/2 percent of the stock of SMI. Since 1969,

14        about ***1,500 SMI machines*** have been manufactured and sold, and SMI

15        paid total royalties of approximately $26,000.

16    *Id*. at 1076; *see also Hanson v. Alpine Valley Ski Area*, 611 F.2d 156, 160 (6th Cir.

17    1979) (confirming that third-party SMI was previously "licensed" in 1970 and

18    subsequently "made and sold around a thousand snow-making machines").

19        Twenty-six years later, in its 2009 *Crown Packaging* decision, the Federal

20    Circuit upheld *Hanson*. In so doing, it confirmed that the test for whether § 287(a)

21    applies is only whether method claims are "asserted*" **in the current litigation***, not

22    whether apparatus claims were previously licensed or sold without patent marking:

23        ***Although Rexam asserted only the method claims*** of the '839 patent

24        against Crown, the district court dismissed Rexam's counterclaim because

25        the '839 patent also includes unasserted apparatus claims. The district

26        court erred. ***The law is clear that the notice provisions of § 287 do not***

27        ***apply where the patent is directed to a process or method.*** *Bandag, Inc.*

28        *v. Gerrard Tire Co*., 704 F.2d 1578, 1581 (Fed.Cir.1983). ***In Hanson, 718***

**Glaser Weil**

7

*F.2d at 1082-83, we held that 35 U.S.C. § 287(a) did not apply where the patentee only asserted the method claims of a patent which included both method and apparatus claims. Hanson is factually identical to this case, and we are therefore bound by the rule of Hanson.*

*Crown Packaging*, 559 F.2d at 1316 (emphasis added).

In their Reply, Defendants attempt to distinguish *Hanson,* and create a new test based on whether "licensees practiced apparatus claims or there was a tangible item to mark." Dkt. 49 at 4. Defendants justify this by alleging that the record in *Hanson* was unclear, leaving room for interpretation on the scope of the Federal Circuit's holding. *Id.* But *Hanson's* record was clear: "Hanson licensed his patent to…SMI [which subsequently sold] about 1,500 [licensed] SMI machines." *Hanson*, 718 F.2d at 1076. Thus, in *Hanson,* there was a "tangible item to mark," and the patentee *did* license a third party to make and sell that "tangible item," without marking it with the patent number. Yet, § 287(a) still did not apply, because "the patentee only asserted the method claims." *Crown Packaging*, 559 F.2d at 1316 (*citing Hanson,* 718 F.2d at 1082-83). Thus, there is no "ambiguity" in the record of *Hanson*.

Nor do Defendants' efforts to distinguish *Hanson*, and create a new exception, square with the facts in *Crown Packaging*. There, the patentee licensed a third party to "make, use and sell 'Licensed Machines.'" *Crown Packaging,* 498 F.Supp.2d at 722. Thus, as in *Hanson*, there was a "tangible item to mark," which was sold without the patent number. Yet Section 287(a) still did not apply, because only method claims were asserted in the litigation. *Id.* To sidestep *Crown Packaging*, Defendants propose in their Reply a second unworkable test, which would turn on whether the licensed apparatus was "capable of performing 'noninfringing [] methods depending on how they are configured.'" Dkt. 49 at 4. But this is not the law, and it conflicts with the binding holdings of *Hanson* and *Crown Packaging*, both of which cannot be distinguished from the facts pled in Core's SAC.

Defendants also contend that *American Medical* requires Core to "plead

1838758

1  compliance" with Section 287(a)'s "constructive notice" provisions. Dkt. 48 at 4-5.

2  *American Medical* says nothing of the sort. Rather, *American Medical* makes clear

3  that whether the patent marking statute applies to a patent with both apparatus and

4  method claims does not turn on whether there is a "tangible article" to mark.  It turns

5  on whether both apparatus and method claims are ***asserted*** in the litigation. If both are

6  asserted, marking is required to recover damages on either type of claim; but, if ***only***

7  method claims are asserted, ***no marking is required***:

8      In *Devices for Medicine*, the court noted that in *Bandag* and *Hanson*, a

9      distinction was made between cases "in which only method claims are

10     asserted to have been infringed" and cases where a patentee alleges

11     infringement of both the apparatus and method claims of the same patent.

12     In this case, ***both apparatus and method claims of the '765 patent***

13     ***were asserted*** and there was a physical device produced by the claimed

14     ***method that was capable of being marked.  Therefore, we conclude that***

15     ***AMS was required to mark its product pursuant to section 287(a) in***

16     ***order to recover damages under its method claims prior to actual or***

17     ***constructive notice being given to MEC***.

18  *American Medical,* 6 F.3d at 1539 (emphasis added). Because Core is asserting only

19  method claims, the patent marking statute does not apply, and there is no need for

20  Core to "avail itself" of any provisions of the marking statute.

21     Finally, Defendants cite a number of Federal Circuit and district court cases.

22  But all of these cases are unavailing, because none of them either conflict with, or

23  overrule, the bright-line rule of *Hanson* and *Crown Packaging*.

24     First, Defendants cite *ActiveVideo Networks v. Verizon Commc'ns*, 694 F.3d

25  1312, 1335 (Fed. Cir. 2012). But Defendants deceptively short cite a passage in the

26  decision to change its meaning. Dkt. 44-1 at 12. The entire passage, quoted below,

27  makes plain that marking is required ***only when***—unlike in the present case—a party

28  "intends to avail itself of the constructive notice provisions of section 287(a)":

CORE OPTICAL'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1838758

1   In *American Medical*, we held that if a single patent contains both apparatus

2   claims and method claims, the marking requirement applies to all the claims:

3       "Where the patent contains both apparatus and method claims,

4       however, to the extent that there is a tangible item to mark by which

5       notice of the asserted method claims can be given, a party is obliged

6       to do so *if it intends to avail itself of the constructive notice*

7       *provisions of section 287(a)*."*Am. Med.*, 6 F.3d at 1538.

8   *Active Video*, 694 F.3d at 1335 (emphasis added). Here, Core does not "intend to avail

9   itself of the constructive notice provisions of section 287(a)," because section 287(a)

10  does not apply at all. Thus, *Active Video* is inapposite.

11      Defendants' reliance on *Active Video* fails for another reason; that decision

12  confirms that the "clear" rule of *Hanson* and *Crown Packaging* remains the law:

13      "[t]he law is *clear* that the notice provisions of § 287 do not

14      apply where the patent is directed to a process or method." *Fujitsu*

15      *Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1332 (Fed. Cir. 2010) (*quoting*

16      *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co., 559 F.3d*

17      *1308, 1316 (Fed.Cir.2009))* . . . *Am. Med. Sys., Inc. v. Med. Eng'g*

18      *Corp.*, 6 F.3d 1523, 1538 (Fed. Cir. 1993); *Hanson v. Alpine Valley*

19      *Ski Area, Inc., 718 F.2d 1075, 1083 (Fed.Cir.1983) ("It is 'settled in*

20      *the case law that the notice requirement of [§ 287(a)] does not apply*

21      *where the patent is directed to a process or method.'"*

22  *Active Video*, 694 F.3d at 1334 (emphasis added). Indeed, *Active Video* considered—

23  and *rejected*—a proposed new rule that the patent marking requirement should extend

24  to patents containing "nothing but method claims, if a patentee also asserts other

25  patents with apparatus claims embodying the same invention in the same litigation,"

26  dubbing the proposed rule "a confusing mess." *Id*. Defendants' proposed overruling

27  of *Hanson* and *Crown Packaging* would, likewise, create a "confusing mess." And,

28  this Court lacks the authority to overrule the controlling, dispositive Federal Circuit

CORE OPTICAL'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1838758

decisions in *Hanson* and *Crown Packaging.*

Second, Defendants cite *Rembrandt Wireless Techs., LP v. Samsung Elecs. C*o., 853 F.3d 1370 (Fed. Cir. 2017). But in *Rembrandt*, the Federal Circuit found that marking under Section 287 applied because the patentee had previously asserted an apparatus claim (claim 40 of U.S. Patent No. 8,023,580) ***in that same case,*** and had maintained that assertion throughout most of the case. Dkt. 43-10 (Rembrandt's Infringement Contentions) at 2 (asserting infringement of claim 40). After the defendants filed a motion for summary judgment for failure to mark (*see* Dkt. 43-11 at 36-37), Rembrandt tried to retract its assertion of claim 40, both by withdrawing claim 40 from its infringement contentions, and by filing a statutory disclaimer of claim 40 in the USPTO. *Rembrandt*, 853 F.3d at 1382 (Fed. Cir. 2017). But the Federal Circuit held that this was "too little, too late." Because Rembrandt had actively asserted the apparatus claim ***in that same litigation***, the marking statute applied, regardless of Rembrandt's later attempts to disclaim that claim. *Id*. at 1383-84. By contrast, Core has ***never*** asserted any apparatus claims in this litigation against Defendants. Thus, *Rembrandt*—a case in which the plaintiff ***actively*** pursued apparatus claims throughout a large portion of the litigation—is inapposite.

Third, Defendants cite *Huawei Techs. Co. Ltd. v. T-Mobile US, In*c., No. 2:16-CV-0052-JRG-RSP, 2017 U.S. Dist. LEXIS 15383, at *9-10 (E.D. Tex. Sep. 4, 2017). In *Huawei*, however, the district court found that the plaintiff asserted ***both apparatus and method claims*** against the defendants. *Huawei Techs.,* 2017 U.S. Dist. LEXIS 15383, at *9-10 ("because Huawei is asserting claims, ***including device claims***, that encompass its unmarked products, the marking statute applies") (emphasis added). Here, Core Optical asserts ***only*** method claims. Thus, *Huawei Techs.* provides no support for Defendants' motion.

Fourth, in the face of these inapplicable decisions, Defendants cite *Arctic Cat, Inc. v Bombardier Recreational Products. Inc.,* 950 F.3d 860, 865 (Fed. Cir. 2020) ("*Arctic Cat II*"), arguing that "the notice requirement attaches" once a patentee

CORE OPTICAL'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Glaser Weil

begins selling a patented article. *Id.* Dkt. 48 at 6. But Defendants misstate the law again. In *Arctic Cat II*, the Federal Circuit made no mention of the *Hanson* and *Crown Packaging* decisions—because those decisions did not apply. To the contrary, as the Federal Circuit explained in an earlier *Arctic Cat* decision, the plaintiff there **only** asserted **apparatus** claims. *See Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1357 (Fed. Cir. 2017) ("*Arctic Cat I*") ("Arctic Cat sued BRP for infringement of claims 13, 15, 17, 19, 25, and 30 of the '545 patent and claims 15–17, and 19 of the '969 patent," all apparatus claims directed to either a "thrust system" or a "watercraft"). Because *Arctic Cat II* did not even involve the assertion of method claims, it cannot stand for the novel point of law that Defendants propose.

Fifth, Defendant cites another district court case—*Merck & Co. Inc. v. MediPlan Health Consulting, Inc.*, 434 F. Supp. 2d 257, 261 (S.D.N.Y 2006)—arguing that "where a combined patent covers a tangible article, plaintiffs are not relieved of the duty to mark simply by asserting only method claims." Dkt. 49 at 3. But the district court's *Merck & Co.* decision (2006) predates *Crown Packaging* (2009), and rests on a finding that a split of authority had developed at the district court level, which the court used to adopt a rule contrary to *Hanson*. *See* 434 F. Supp. 2d at 263 ("Only one district court has adopted this reasoning, and given the weight of the contrary authority, I disagree with its conclusion. *See Coca–Cola Co. v. Pepsico, Inc.*, No. 02 Civ. 2887(RWS), slip op. at 4 (N.D. Ga. Sept. 29, 2004) (concluding that 'because only the method claims of the '421 Patent are asserted ... § 287(a) is inapplicable vis-a-vis that patent and accused device.'"). Even assuming the *Merck & Co.* court correctly found a split among district courts (none of which are binding on this Court), it makes no difference: every district court decision misapplying *Hanson* has been overruled by the subsequent Federal Circuit decision in *Crown Packaging*.

Additionally, *Merck & Co.* is easily distinguishable from this case. In *Merck & Co.,* the complaint did not restrict itself to asserting only method claims. Rather, the complaint asserted that "Defendants' sales and/or offers for sale **of simvastatin**

1    ***products*** in New York and elsewhere in the United States, are without license or

2    permission from Plaintiffs, ***and infringe the '784 patent*** under 35 U.S.C. § 271."

3    *Merck & Co.*, 434 F. Supp. 2d at 263, n. 5. Since the complaint accused the

4    defendant's "product" sales of infringement, and asserted that those sales infringed

5    "the '784 patent"—which included both apparatus and method claims—***as a whole****,*

6    the court found that the patentee had "arguably . . . already asserted both product and

7    method claims." *Id.* Thus, the court's statement that § 287(a) would apply even if

8    Merck had only asserted method claims was *dicta.* Here, by contrast, Core's SAC

9    (which is the only operative complaint) expressly limits this case to "only method

10   claims," and charges only the ***use*** of Defendants' Fiber Optic XPIC Devices with

11   direct infringement. SAC, ¶¶ 74-75. Thus, *Merck & Co.* is inapposite.

12       In sum, the binding precedent of *Hanson* and *Crown Packaging* remains the

13   law: "§ 287(a) [does] not apply where the patentee only assert[s] the method claims of

14   a patent which include[s] both method and apparatus claims." *Crown Packaging,* 559

15   F.3d at 1316. That binding precedent controls here. Accordingly, the marking statute

16   does not apply, and it poses no bar to Core's recovery of damages.

17      **B.**    **Defendants Do Not Properly Identify Any Third-Party Products That**

18              **Require Marking**

19       Even if this Court overturns the established precedent of *Hanson* and *Crown*

20   *Packaging*, Defendants' motion still fails because Defendants have not properly

21   identified any third-party products that require marking. *See Arctic Cat I*, 876 F.3d at

22   1368 ("We hold an alleged infringer who challenges the patentee's compliance with §

23   287 ***bears an initial burden of production*** to articulate the products it believes are

24   unmarked 'patented articles' subject to § 287") (emphasis added).

25       While Defendants, as part of a legal argument regarding Core's prior settlement

26   agreements, identify certain exemplary products that were accused of infringement in

27   prior litigations (*see* Dkt. 44-1 at 11-12), Defendants broadly contend thereafter that

28   Core's prior licenses "triggered Core's obligation to mark." *Id.* at 12. But these non-

CORE OPTICAL'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1  specific allegations cannot meet Defendants' "burden of production" under *Arctic Cat*

2  *I* to "articulate the products it believes are unmarked patented articles."

3      Moreover, whether there are any products that Core Optical's licensees were

4  required to mark under § 287(a) turns on myriad underlying issues of fact. These fact

5  issues include the prior settlement terms, the structure and function of the licensees'

6  products, and the application of the apparatus claims of the '211 Patent to those

7  products. Such fact issues cannot be resolved at the pleading stage.

8      Indeed, Defendants' Reply acknowledges this reality in its attempt to

9  distinguish *Hanson* and *Crown Packaging*. *See* Dkt. 49 at 4 ("There is no evidence in

10  *Hanson* or the underlying opinion…that the licensees practiced the apparatus claims

11  or that there was a tangible item to mark.") But the decisions in *Hanson* and *Crown*

12  *Packaging* both plainly stated that the patents in those cases were licensed for the

13  manufacture of "machines"—i.e., **apparatuses.** *See Hanson*, 718 F.2d at 1076 ("In

14  1969, Hanson licensed his patent to Snow Machines International ["SMI"]…. Since

15  1969, about 1,500 SMI **machines** have been manufactured and sold"); *Crown*

16  *Packaging,* 498 F.Supp.2d at 722 ("The agreement gave Belvac a non-exclusive

17  license to make, use and sell 'Licensed **Machines**.'") Thus, in both *Hanson* and *Crown*

18  *Packaging*, the patentees did license the apparatus claims to their licensees.

19  Nonetheless, Defendants' argument demonstrates that whether Core's prior licensees

20  actually practiced the apparatus claims of the '211 Patent is a question of **fact**.

21      Moreover, whether such unarticulated products practiced the apparatus claims

22  of the '211 Patent involves further legal issues, including the proper construction of

23  the (non-asserted) apparatus claims under *Markman v. Westview Instruments, Inc*.,

24  517 U.S. 370 (1996). That issue itself potentially involves underlying factual issues,

25  with corresponding expert reports and discovery. *Teva Pharma. USA, Inc. v. Sandoz,*

26  *Inc*., 574 U.S. 318, 326 (2015). Because these inherent factual issues cannot possibly

27  be decided at the pleading stage, Defendants' motion to dismiss should be denied.

28      **C.**    **The SAC States a Claim for Induced and Contributory Infringement**

Defendants assert that Core has failed to state a claim for induced and contributory infringement (Counts II and III) of the SAC, because Core has not "plausibly allege[d] that [Defendants] had 'knowledge of the patent in suit and knowledge of patent infringement.'" Dkt. 44-1 at 17 (*quoting Commil USA, LLC v. Cisco Sys.,* 135 S. Ct. 1920, 1926 (2015)). Defendants are mistaken.

### 1.  Core Has Adequately Pled Knowledge of the Patent

"To satisfy [the] knowledge requirement at the pleading phase, a patentee . . . 'must make out the barest factual assertion of knowledge' of the patent." *Finjan, Inc. v. Sophos, Inc.*, No. 14-CV-01197-WHO, 2015 WL 7075573, at *3 (N.D. Cal. Nov. 13, 2015). But Core has made out far more than the "barest factual assertion" of pre-suit knowledge. Core has *conclusively shown* that Defendants had such knowledge.

As alleged in Paragraphs 91-92 of the SAC, the '211 Patent was cited as relevant prior art during the prosecution of six separate Nokia patents. Defendants do not dispute that, by such citation, Defendants' "patent prosecution counsel" were made aware of the '211 Patent. Defendants argue, however, that Core has not shown "how any alleged knowledge of the '211 Patent may have passed from Defendants' patent prosecution counsel to anyone else *inside* Defendants' respective business." Dkt. 44-1 at 18-19. Defendants appear to argue that any knowledge by Defendants' *outside* prosecution counsel cannot be attributed to Defendants themselves. This argument is wrong on the law, and wrong on the facts.

On the law, it is well-established that "the knowledge of [a party's patent prosecution] lawyers is imputed to [the party] itself." *Veritas Operating Corp. v. Microsoft Corp.*, 562 F. Supp. 2d 1141, 1277–78 (W.D. Wash. 2008).  But Core does not need to rely on "imputation" of knowledge from outside counsel, because three of the six patents cited in SAC ¶ 91 were prosecuted by *in-house* counsel. These are:  (i) U.S. Pat. No. 7,747,169 ("the '169 patent"), prosecuted by "John F. McCabe" (Dkt. 42-11 at 1); (ii) U.S. Pat. No. 7,822,350 ("the '350 patent"), which was prosecuted by "E.J. Rosenthal" (Dkt. 42-17 at 1); and (iii) U.S. Pat. No. 8,023,834 ("the '834

1    patent"), which was also prosecuted by "John F. McCabe" (Dkt. 42-18 at 1).

2         John F. McCabe and E.J. Rosenthal were both **in-house** counsel at Nokia's

3    predecessor-in-interest, Alcatel-Lucent. This is confirmed by public records from the

4    USPTO, of which this Court may take judicial notice. *Lee v. City of Los Angeles*, 250

5    F.3d 668, 689 (9th Cir. 2001). For instance, a transmittal letter filed during

6    prosecution of the '169 patent was signed by "John F. McCabe" of "Alcatel-Lucent

7    USA, Inc." Ex. A. The issue fee transmittal for the '350 patent was signed by "Patty

8    Giebler" on behalf of "E.J. Rosenthal" of "Alcatel-Lucent USA, Inc." Ex. B. And, a

9    "Notice of Non-Complaint Amendment" was filed in the prosecution of the '834

10    patent by "John F. McCabe" of "Alcatel-Lucent USA, Inc." Ex. C. Public records

11    demonstrate that the '169, '350 and '834 patents were prosecuted by **employees** of

12    Alcatel-Lucent, not outside counsel. Thus, through its own employees, Alcatel-Lucent

13    had knowledge of the '211 patent as of the issue dates of the '169, '350, and '834

14    patents (which are 6/29/2010, 10/26/2010 and 9/20/2011, respectively). That

15    knowledge is imputed to Nokia, because Nokia is the successor-in-interest to Alcatel-

16    Lucent. *See* SAC, ¶ 43; *see also Baker Hughes, Inc. v. Davis-Lynch, Inc.,* No. CIV.A.

17    H-97-2905, 2000 WL 33993301 at *9 (S.D. Tex. June 22, 2000); *Valutron, N.V. v.*

18    *NCR Corp.*, No. C-3-81-444, 1992 WL 698780 at *10 (S.D. Ohio Aug. 18, 1992).

19    This means that Nokia had knowledge of the '211 patent, through its predecessor-in-

20    interest Alcatel-Lucent, by at least June 29, 2010.

21         Moreover, the USPTO did not advise Alcatel-Lucent of the existence of the

22    '211 Patent. Alcatel-Lucent advised the USPTO of its existence—in **2008**. On May

23    23, 2008, Mr. McCabe filed an Information Disclosure Statement ("IDS") in the

24    prosecution of the '169 patent. Ex. D. Patent applicants use IDSs to advise the patent

25    office of prior art which they believe to be relevant to the application. In this

26    particular IDS, Mr. McCabe identified three "U.S. Patent Documents" which he (or

27    Alcatel-Lucent) believed to be relevant to the '169 patent. Ex. D at 2. One of those

28    three patents was U.S. Patent "6,782,211" to "Mark T. Core" – i.e., **the '211 Patent**.

CORE OPTICAL'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Glaser Weil

In short, the facts demonstrate that by 2008, Alcatel-Lucent was aware of the '211 patent, and sufficiently familiar with its contents to conclude that it was "material to [the] patentability" of the '169 patent. 37 C.F.R. § 1.56(a). This establishes that Alcatel-Lucent knew of the '211 Patent, and knew of its relevance to the "Adaptive Polarization Tracking and Equalization in Coherent Optical Receivers" technology claimed in the '169 Patent (Dkt. 42-11 at 1), by **2008**. That knowledge is chargeable to Nokia, as Alcatel-Lucent's successor-in-interest. It is also chargeable to Nokia because **Mr. McCabe himself** is an active employee of Nokia. According to the current USPTO Practitioner Database, of which this Court may take judicial notice, Mr. McCabe is employed by "Nokia of America Corporation" of "Murray Hill, NJ." Ex. E at 1. Even if Nokia were not Alcatel-Lucent's successor-in-interest, it would separately have knowledge of the '211 Patent through Mr. McCabe, who knew of the '211 patent at least as early as **May of 2008**. *See* Ex. E at 1.

Because Nokia is chargeable with knowledge of the '211 Patent by 2008, Core has adequately pled "knowledge of the patent in suit." *Commil,* 135 S. Ct. at 1926.

## 2. Core Has Adequately Pled Knowledge of Infringement

Core has also adequately pled "knowledge of patent infringement." *Id.* It is well-established that "specific intent [to induce infringement] may be inferred from circumstantial evidence where a defendant has both knowledge of the patent and specific intent to cause the acts constituting infringement." *Ricoh Co. v. Quanta Computer Inc*., 550 F.3d 1325, 1342 (Fed. Cir. 2008).

"[E]vidence that [the accused infringer] knew of the [asserted] patent and instructed its . . . customers about how to use [the accused instrumentalities] to [infringe the patent] . . . is sufficient to create a genuine issue of material fact as to whether [the infringer] had the requisite specific intent to induce infringement." *Advanced Software Design Corp. v. Fiserv, Inc.,* 641 F.3d 1368, 1376 (Fed. Cir. 2011). Allegations that a defendant distributes "user manuals that teach allegedly infringing behavior" are adequate to support an inference of specific intent. *Cywee*

Glaser Weil

Case 8:21-cv-00346-RAO   Document 50   Filed 05/18/209   Page 23 of 329   Page ID #:3018

*Grp. Ltd. v. Huawei Device Co.*, No. 2:17-CV-495-WCB, 2018 WL 3819392, at *4 (E.D. Tex. Aug. 10, 2018) (Bryson, C.J.) (plaintiff adequately pled specific intent where it "describe[d] three user manuals that teach allegedly infringing behavior" and "describe[d] exemplary allegations of direct infringement in great detail.")

Here, as in *Cywee*, Core has pled sufficient facts to support a plausible inference that Defendants specifically intended to induce their customers to infringe the '211 Patent. First, as shown in Section III.C.1 *supra*, Core has shown that Defendants knew about the '211 Patent since 2008. Second, Core has plausibly pled that Defendants had "specific intent to cause the acts constituting infringement"—i.e., that Defendants specifically intended their customers to ***use*** the Fiber Optic XPIC Devices in their normal manner, which constitutes infringement. *Ricoh.*, 550 F.3d at 1342. Core has pled that the Defendants sold and distributed the Fiber Optic XPIC Devices to customers within the United States. SAC, ¶¶ 35-36, 73, 78. As in *Cywee*, Core has shown, "in great detail," how a customer's normal use of the Fiber Optic XPIC Devices infringes claim 33 of the '211 Patent. SAC, ¶¶ 36-66. Clearly, Defendants sell the Fiber Optic XPIC Devices with the intent that their customers will ***actually use*** the Devices in the normal way—and Core has alleged this. SAC, ¶¶ 78, 86, 99. Thus, Core has plausibly pled both "knowledge of the patent" and that Defendants had "specific intent to cause the acts constituting infringement"—*i.e.,* intent to cause their customers' ***infringing use*** of the Fiber Optic XPIC Devices. This is sufficient, as a matter of law, to support a plausible "infer[ence]" that Defendants specifically intended to induce infringement. *Ricoh*, 550 F.3d at 1342.

Core's allegations go even further. Core also alleges that Defendants have disseminated "documentation and instructions demonstrating how to use the device to infringe the claims." SAC, ¶ 78. Core identifies several examples of such instructions. *Id.*, ¶¶ 78-85. For instance, Core identifies Nokia's "NFM-P" website. *Id.* Core points to specific passages of the NFM-P website that "provide[] instructions on how to configure different line cards for use with the 1830 PSS system." *Id.*, ¶ 81. Core

CORE OPTICAL'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1838758

identifies where the website specifically instructs a user how to set up the D5X500 line card to use *dual polarization* mode. *Id.*, ¶¶ 82-84. As discussed at length in Paragraphs 37-66 of the SAC, dual polarization mode is the infringing use mode of the Fiber Optic XPIC Devices. Thus, Core has pointed to specific documentation, disseminated by Nokia, which expressly instructs a user how to use the Fiber Optic XPIC Devices in an infringing manner. Under all of the case law, this is sufficient to state a claim for "specific intent." *See Cywee*, 2018 WL 3819392, at *4 (specific intent inferred from user manuals that teach infringement); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1364 n.4 (Fed. Cir. 2006) (specific intent inferred where defendant "provided [an] instruction sheet to customers directing them to perform specific acts leading to the assembly of infringing devices.")

Core's allegations go further still. Core alleges—and Nokia does not dispute— that on October 15, 2007, Core's patent counsel sent a letter to Siemens's in-house patent counsel, notifying Siemens of the '211 Patent. SAC, ¶¶ 93-95; Dkt. 42-20 (notice letter). Core sent the letter after it noticed that Siemens had filed "Published Patent Application No. 2005/0286904." Dkt. 42-20. The letter states that Core believed Siemens's patent application was "directed to *patented technology held by our client*"—*i.e.* "*identical technology* as covered by U.S. Patent No. 6,782,211." *Id.* Core demanded that the '211 Patent be submitted as prior art in Siemen's application, and asked if Siemens was "interested in obtaining a license of the technology or is interested in acquiring the '211 Patent." *Id.*

The Siemens patent application discussed in Core's notice letter was Application No. "10/528,313." Dkt. 42-21 at 1. That application ultimately issued as *Nokia's '054 patent,* in which the '211 Patent was expressly cited as prior art. SAC, ¶ 91; Dkt. 42-10 at 1. The timeline of *how* the '211 Patent came to be cited in the '054 patent strongly suggests that Defendants have known, since at least 2008, that use of the Fiber Optic XPIC Devices infringes the '211 Patent.

On October 15, 2007, Core sent its notice letter to Siemens, alleging that the

19

'054 patent application was for "identical" technology as the '211 Patent. Dkt. 42-20.
On January 7, 2008, Siemens assigned the '054 patent application to Nokia Siemens
Networks (NSN). SAC, ¶ 95; Dkt. 42-22 at 2. In August 2013, Nokia became the sole
owner of NSN. SAC, ¶ 92; Dkt. 42-24. Thus, any knowledge chargeable to NSN is
chargeable to Nokia, as NSN's successor-in-interest. *Baker Hughes,* 2000 WL
33993301 at *9; *Valutron,* 1992 WL 698780 at *10.

On October 10, 2008, patent counsel for NSN (now Nokia) submitted an IDS in
the '054 prosecution. Ex. F. The IDS identified one— and only one— reference
which NSN deemed relevant to the '054 patent: ***the '211 Patent***. Ex. F at 3. It is not
hard to infer what happened. When NSN took over the '054 prosecution from
Siemens in January 2008, it received Core's October 15, 2007 notice letter—
presumably when the file for the application was transferred—and reviewed it. NSN
concluded that the '211 Patent was material to the patentability of the '054 patent.
NSN then submitted the '211 Patent to the USPTO in an IDS. This means that, as of
2008, NSN (now Nokia) knew that the '211 Patent was ***directly relevant*** to the
technology claimed in Nokia's '054 patent.

Nokia also certainly knew of the '054 patent's relevance to the Fiber Optic
XPIC Devices. Like the Fiber Optic XPIC Devices, the '054 patent describes a
fiberoptic "receiving part" which receives "polarization multiplex[ed] signal[s]." Ex.
42-10, 3:42-52. The received signals are sent to a "controllable filter 16" that
"***reconstruct[s]*** the multiphase signals QPS1 and QPS2" originally sent from the
transmitter, in order to correct for the fact that the received signals "contain ***both***
portions of the first multiphase signals QPS1 ***and*** of the second multiphase signal
QPS2." *Id.*, 5:44-54. In other words—the '054 patent's "controllable filter 16"
performs ***cross-polarization interference canceling***. *Id.* Indeed, Figure 5 shows that
the '054 patent performs cross-polarization interference canceling by way of a
***butterfly-equalizer***, with a 2x2 "coefficient matrix" (*Id.*, Fig. 5 and 5:55-62) – just
like the Fiber Optic XPIC Devices. *See* SAC, ¶¶ 46-52; *see also* Dkt. 42-8 at 38-39.

In sum, Core's allegations plausibly establish that: (i) Nokia knew, through Core's notice letter, that the '211 Patent was directly related to the technology of the '054 patent; and (ii) the Fiber Optic XPIC Devices practice the '054 patent. On these facts—and the other facts described above—it is "plausible" to infer that Defendants knew that their customers' use of the Fiber Optic XPIC Devices infringes the '211 Patent. Thus, Core has plausibly alleged "knowledge of patent infringement," and Core's indirect infringement claims should stand. *Commil*, 135 S. Ct. at 1926.

If the Court concludes, however, that Core has not plausibly alleged such knowledge, it should only dismiss Core's indirect infringement allegations *without* prejudice. Whether Defendants had the required mental state is a question of fact. *Ricoh*, 550 F.3d at 1340. Core has served discovery inquiring into Defendants' mental state. Dkt. 48-2 at 8; Dkt 48-3 at 8. Defendants have refused to provide such discovery. Dkt. 48-4 at 19-20; Dkt. 48-5 at 21-23. Core expects that, once Defendants provide the requested discovery, it will learn additional facts tending to show both knowledge of the '211 Patent, and knowledge of infringement of that patent.

Accordingly, if the Court dismisses Counts II and III, it should do so *without* prejudice for Core to replead these counts after it has received the relevant discovery.

### D. Core Has Adequately Pled Personal Jurisdiction Over Nokia Corp.

Nokia Corp., a Finnish company, argues that Core has not adequately pled personal jurisdiction over it. Dkt. 44-1 at 19-25. But "[w]here, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Goodbreak, LLC v. Hood By Air, LLC*, No. CV1503897DDPASX, 2016 WL 146418, at *2 (C.D. Cal. Jan. 12, 2016). For specific personal jurisdiction, that showing requires only that: "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008). "Although the plaintiff cannot simply rest on the bare allegations of its

1 complaint, uncontroverted allegations in the complaint must be taken as true."

2 *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 797 (9th Cir. 2004).

3     Here, based on the "uncontroverted allegations" in the SAC, Core has "ma[de]

4 a prima facie showing of jurisdictional facts" for specific personal jurisdiction. *Id*.

5     On the first and second prongs, Nokia Corp. does not dispute that its wholly

6 owned subsidiary, Nokia US, sells and uses the Fiber Optic XPIC Devices within

7 California. Nokia Corp. argues, however, that it does not *itself* "provide the products

8 at issue" to Nokia US. *Id.* at 23. Relying on the Declaration of its Senior Legal

9 Counsel, Ulla Nyberg, Nokia Corp. asserts that it merely "provides administrative

10 services to its subsidiaries." *Id.* However, with one notable exception, Ms. Nyberg

11 provides no explanation of what these "administrative services" are. Dkt. 44-14, ¶ 10.

12     These "administrative services" are likely both "purposefully directed"

13 towards California, and related to the Fiber Optic XPIC Devices in suit. Nokia Corp.

14 must draft the product documentation for the Fiber Optic XPIC Devices to ensure

15 worldwide uniformity. Nokia Corp. is also likely responsible for the overall design

16 and engineering of the Fiber Optic XPIC Devices, to ensure uniformity. Nokia Corp.

17 is also likely involved in marketing and selling the Fiber Optic XPIC Devices to

18 major customers, such as the many tech firms based in California. Based on the

19 allegations in Core's SAC, it is more than "plausible" that Nokia Corp. "purposefully

20 directs" activities relating to the Fiber Optic XPIC Devices towards California. Ms.

21 Nyberg's single statement that Nokia Corp. merely "provides administrative services

22 to its subsidiaries" does not negate Core's plausible allegations on these points.

23     Moreover, Ms. Nyberg *admits* that Nokia Corp. "operates the domain,

24 https://www.nokia.com." Dkt. 44-14, ¶ 10. Core's SAC alleges, in detail, how the

25 www.nokia.com website is an interactive sales website, which allows customers in

26 California to "connect with sales" in order to purchase the Fiber Optic XPIC Devices.

27 SAC, ¶¶ 20-21. The nokia.com domain also includes the subdomain

28 infocenter.nokia.com. SAC, ¶ 22. The infocenter.nokia.com subdomain—which is

Glaser Weil

CORE OPTICAL'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1838758

operated by Nokia Corp.—provides detailed technical instructions on how to use the Fiber Optic XPIC Devices in an infringing manner. SAC, ¶¶ 79-84. Those detailed instructions are available to customers in California, and—on information and belief—California customers have used those instructions to use the Fiber Optic XPIC Devices in an infringing manner. SAC, ¶¶ 22, 84-86. Thus, Nokia Corp.'s operation of the nokia.com website is both: (i) "purposefully directed" towards California; and (ii) directly related to Core's claims. This establishes jurisdiction.

Indeed, Nokia's Internet activities alone establish jurisdiction:

> By advertising and offering its products for sale via the Internet, [a Defendant] has placed its products into the stream of commerce intending that they would be purchased by consumers with access to the Web, including California citizens. By engaging in Internet commerce with California citizens, [a Defendant] has established the minimum contacts that are a prerequisite to the exercise of jurisdiction over it.

*Stomp, Inc. v. NeatO*, LLC, 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999). Here, as in *Stomp*, Nokia Corp. "advertises and offers [the Fiber Optic XPIC Devices] for sale via the Internet," intending that they be purchased and used "by consumers with access to the Web, including California citizens." This case presents the additional fact, not present in *Stomp*, that Nokia Corp.'s website also instructs users how to use the Fiber Optic XPIC Devices in an infringing manner. Thus, Nokia's operation of the nokia.com website "has established the minimum contacts that are a prerequisite to the exercise of jurisdiction over it." *Id.*

Nokia Corp. cites three cases for the proposition that its website does not establish purposeful availment, because (allegedly) its website only facilitates sales between **Nokia US** and California customers. Dkt. 44-1 at 24. But Nokia's declarant, Ms. Nyberg, never says this. Core has alleged that, through the nokia.com website, Nokia Corp. *itself* markets the Fiber Optic XPIC Devices to California customers, and

23

CORE OPTICAL'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1   *itself* instructs such customers how to use the Fiber Optic XPIC Devices in an

2   infringing manner. SAC, ¶¶ 20-22, 79-84. On a Rule 12(b)(2) motion,

3   "[u]ncontroverted allegations in the complaint must be taken as true . . . [unless] they

4   are contradicted by affidavit." *Clerkin v. MyLife.com, Inc.*, No. C 11-00527 CW, 2011

5   WL 3607496, at *2 (N.D. Cal. Aug. 16, 2011). Ms. Nyberg does not contradict Core's

6   allegation that Nokia Corp. *itself* markets and instructs on the use of the Fiber Optic

7   XPIC Devices, through the nokia.com website. Thus, taking Core's allegations as

8   true, Core has properly pled "purposeful availment."

9       Moreover, the cases cited by Nokia Corp. are distinguishable. In *In re Enter.*

10  *Rent-A-Car Wage & Hour Emp't Practices Litig.*, 735 F. Supp. 2d 277, 315-316

11  (W.D. Pa. 2010), the plaintiff merely alleged "general jurisdiction," which has a

12  "more stringent [test] than the test applied to questions of specific jurisdiction." The

13  same was true in *In re Nazi Era Cases Against German Defendants Litig.*, 320 F.

14  Supp. 2d 204, 218-220 (D.N.J. 2004). Here, by contrast, Core asserts specific

15  personal jurisdiction over Nokia Corp., based on Nokia Corp.'s *own* actions.

16      Finally, Nokia Corp. cites *NexLearn v. Allen Interactions, Inc.*, 859 F.3d 1371,

17  1378 (Fed. Cir. 2017), arguing that a "defendant's website [is] insufficient to establish

18  minimum contacts" even if "forum residents could purchase accused products through

19  defendant's website." Dkt. 44-1 at 24. However, in *NexLearn*, there was no allegation

20  or evidence that any customer in the forum state *actually used* the defendant's

21  website to purchase an infringing product. *NexLearn*, 859 F.3d at 1378-79. By

22  contrast, Core has alleged—and Nokia Corp. has not disputed—that customers in

23  California *actually have* used the www.nokia.com website, both to purchase the Fiber

24  Optic XPIC Devices, and to learn how to use them in an infringing manner. SAC, ¶¶

25  20-22, 78-85. Thus, *NexLearn* is inapposite.

26      Nokia Corp. ignores the significance of *Nazomi Commc'ns, Inc. v. Nokia Corp.*,

27  No. SACV10151DOCRNBX, 2010 WL 11509140, at *2 (C.D. Cal. Oct. 12, 2010), in

28  which it *specifically admitted* that it was subject to personal jurisdiction in California.

*See* SAC, ¶¶ 14-19. According to Nokia Corp., that admission no longer applies, because "Nokia Corporation as it existed in 2010 was a dramatically different business than Nokia Corporation as it exists today" Dkt. 44-1 at 23. But the only evidence offered to support this is a single paragraph of Ms. Nyberg's declaration, which states that Nokia Corp. sold its phone business to Microsoft in 2014. Dkt. 44-14, ¶ 11. Nokia Corp. cites no authority holding that a prior judicial admission of jurisdiction loses effect when the party who made the admission sells a business unit. The Nokia Corp. party in this case is the same Nokia Corp. that admitted personal jurisdiction in *Nazomi*. Nokia Corp.'s prior judicial admission of jurisdiction, along with the other facts alleged in the SAC, makes personal jurisdiction proper.

The final prong of the personal jurisdiction analysis asks whether the "assertion of personal jurisdiction is reasonable and fair." *Avocent*., 552 F.3d at 1332. Although Nokia Corp. does not address this prong in its brief, it also favors the exercise of jurisdiction. Nokia Corp. would not be unduly burdened by having to defend this case in this forum. It is represented by the same counsel as its U.S. subsidiary, Nokia US. Those counsel can (and undoubtedly will) pursue a joint defense strategy for Nokia US and Nokia Corp. The additional "burden" of keeping Nokia Corp. as a defendant is essentially just that Nokia Corp. will have to provide discovery to Core. But, if Nokia Corp. were not a defendant, Core would seek such discovery from it anyway—albeit through far less efficient means such as the Hague Convention. There is no reason to force Core to proceed through costly, time-consuming procedures like the Hague Convention to obtain necessary discovery from Nokia Corp., when Nokia Corp. has purposely availed itself of the laws of California, and Core's claims against Nokia Corp. are part of the same transaction as its claims against Nokia U.S. Thus, the exercise of personal jurisdiction over Nokia Corp. is proper.

## III.   CONCLUSION

For the foregoing reasons, Defendants' motion should be denied in its entirety.

DATED:  May 18, 2020

GLASER WEIL FINK HOWARD
   AVCHEN & SHAPIRO LLP


By:  _/s/Lawrence M. Hadley_
     LAWRENCE M. HADLEY
     STEPHEN E. UNDERWOOD

LAWRENCE R. LAPORTE,
LEWIS BRISBOIS BISGAARD & SMITH
LLP

   Attorneys for Plaintiff
   Core Optical Technologies, LLC

1838758

1  **CERTIFICATE OF SERVICE**

2    I HEREBY CERTIFY that all counsel of record who are deemed to have

3  consented to electronic service are being served with a copy of PLAINTIFF CORE

4  OPTICAL TECHNOLOGIES, LLC's OPPOSITION TO DEFENDANTS' MOTION

5  TO DISMISS via the Court's CM/ECF system this 18th day of May 2020.

6

7        /s/  Stephen Underwood
         Stephen Underwood (SB # 320,303)

8

**Glaser Weil**

1838758